BRADY, Justice.
This is an appeal from the Circuit Court of Warren County, Mississippi, wherein the appellee, U. S. Sharkey, obtained a directed verdict against the appellant, William J. Bolls, in the sum of five thousand dollars.
The facts pertinent to this appeal are: In 1962 the appellee first purchased his personal automobile liability insurance from the appellant, a general insurance agent. The appellee began working for Rocket Cab Company as a taxi driver, and in 1963 the appellee went to the appellant to obtain the insurance coverage which he must have to legally drive a taxi. Due to the appellee’s advanced age (he was seventy-four years old on June 15, 1968) and his driving record, assigned risk insurance was the only type that could be obtained. The appellant placed a policy for the appel-lee with the Hartford Accident and Indemnity Company, hereinafter referred to as Hartford. Hartford was to insure the appellee for one year and then for two additional renewal periods of one year each. A five-ten-five policy was issued from August 22, 1963 until August 22, 1964, at which time the policy was renewed from August 22, 1964 to August 22, 1965, being No. 20 AZ 271540.
The appellee received a notice dated July 7, 1965, from Hartford which stated that a premium of $335.50 was due and that the check should be made payable to the broker in time for the broker to forward the money to Hartford prior to August 20, 1965. The notice also stated: “If payment is not received by the company prior to the date specified [August 20, 1965], YOUR AUTOMOBILE LIABILITY INSURANCE WILL TERMINATE. * * NO FURTHER PREMIUM NOTICE WILL BE SENT TO YOU.” Upon re-' ceipt of the notice the appellee went to the appellant’s office and paid him two hundred dollars down on -the amount due. The appellee signed a premium servicing contract with the Merchants Bank and Trust Company in Vicksburg for the remainder of the amount due plus interest in the sum of $143.63 upon which he completed payment on December 16, 1965. No attempt has been made by the appellant to refund any of the money to the appellee. According to the testimony of the appellee the appellant was not in the habit of. and did not give him a copy of this or previous policies. This allegation is strongly denied by the appellant who said that he had mailed copies of the previous policies to the appellee.
The appellant did not remit the appel-lee’s payment to Hartford. On December 8, 1965, the appellee went to the appellant, who filled out a certificate of insurance which was taken to the sheriff of Warren County and then mailed to the Motor Ve- *374 hide Comptroller so that the appellee could get his bus tag. Thereafter, on December 15, 1965, a little before six o’clock in the morning, the appellee was involved in an accident with Mrs. Colean Harris. The appellee testified that he reported the accident the same day to the appellant. The appellant testified that upon checking his file he immediately notified the appellee that he was not insured. The appellee testified that he was not told he did not have insurance until after he was sued and had reported such fact to Mr. Dabney, who he had been told represented the insurance company. The appellee further testified that on the S.R. 21 form which was filled out by the appellant and mailed to the Department of Public Safety, Safety Responsibility Bureau, in Jackson, regarding the accident, he had listed Hartford as the insurer.
The appellant denies that he filled out the form for the appellee. Testimony was given as to the general procedure followed by the Bureau upon receipt of notification of an accident. The S.R. 1 form, a small piece of paper about one and one-half inches wide, is detached from the S.R. 21 form and placed in a folder. On Friday the S.R. 1 forms are sent to the various companies. The forms going to a particular company are all mailed first class in one envelope. Before mailing, the S.R. 1 form is checked against the S.R. 21 form for accuracy and is initialed by the person who does the checking. If an insurance company denies coverage, it must write the Bureau that it is denying coverage. If coverage is not denied, no answer is made. Hartford did not write the Bureau denying that the appellee was covered by them.
The appellee, following the accident, was not asked to post bond or show further proof of insurance.
The appellee had a second accident on May 5, 1966. The proof shows that the appellee settled this accident with Mrs. Johnson for $388.74, which he paid himself, and obtained a release. The appellee testified that he paid this sum because he did not want the second accident to go on his record for fear that the insurance company would terminate his insurance.
Suit was filed against the appellee by Mrs. Harris. An agreement was entered into between Mr. Ellis, who was Mrs. Harris’ lawyer, Mrs. Harris and the appellee. The cause was settled for seven thousand dollars, and a default judgment was entered against the appellant for that amount on December 9, 1966. The judgment was stipulated to by the attorneys for all parties in the case at bar. Neither the appellee nor Mrs. Harris gave any testimony as to damages at this previous trial. After the judgment was entered, the appellee and Mrs. Harris agreed that the appellee would pay twelve hundred dollars as an advance on medical bills and expenses and that the remainder would be paid upon the appel-lee’s obtaining a judgment against the appellant and the insurance company. A second person involved in the December 16, 1965 wreck, Mrs. Sheffield, settled her claim for $250, which the appellant alleges he paid out of the premium money he had received from the appellee.
On June 20, 1967, the appellee filed suit against the appellant and Hartford for recovery of the seven thousand dollar judgment. After hearing all of the testimony in the case, the judge directed a verdict in favor of the defendant, Hartford, and directed a verdict in favor of the appellee and against the appellant in the sum of five thousand dollars. Whereupon the appellant filed an appeal to this Court. The ap-pellee also attempted to appeal as to Hartford, but no bond was filed, and, upon motion by Hartford, the appellee’s cross-assignment of errors and that portion of the appellee’s brief which related to Hartford were stricken from the record.
The appellant made eight assignments of error, which present the following questions :
1. Has the appellee by his conduct waived any claim that he might have against the appellant because of his knowl *375 edge that he was not covered until the policy was delivered into his hands?
2. Did the appellee fail to mitigate his damages ?
3. Was the judgment rendered in the matter of Colean Harris against the ap-pellee void, and are the instant proceedings based on that void judgment likewise void ?
4. Was the matter of settlement a question for the jury?
5. Is Hartford liable to the appellee because it failed to send notice of cancellation as required by the rules of the Assigned Risk Plan, Mississippi Code 1942 Annotated section 5687-03(B) (5) (1956)?
The first contention urged by the appellant in his brief is that the appellee by his conduct waived any claim that he might have against the appellant. The appellant testified that the appellee understood that until he had received an insurance policy he was not covered. To the contrary, the appellee asserted that it was a common practice for the appellant not to send policies to the insured. As is stated in National Surety Corporation v. Vandevender, 235 Miss. 277, 108 So.2d 860 (1959), which is cited by the appellant in his brief : “Estoppel weighs and considers the conduct of men in their dealings with each other and gives that effect and meaning to their actions which common sense and justice dictates.” 235 Miss. at 285, 108 So.2d at 863. To fully explore appellant’s contention we must consider carefully all of the conduct of the appellant and the appel-lee relative hereto and their complete course of dealing. In addition to the testimony above discussed, it must be noted that prior to the accident the appellee went to the appellant in order to get proof of insurance so that he might purchase a bus tag. The appellant gave in writing the necessary proof of insurance and did not in any manner indicate that the appellee was not covered. It was not until after the accident that the appellant by any of his actions indicated that the appellee was not insured. This defense which the appellant now attempts to assert is of an equitable nature, and we find that, as such, his actions prior to the time of the accident prohibit him from now attempting to place a different interpretation upon the dealings of the two parties than he placed upon them as demonstrated by his actions prior to the time of the accident.
In addition, we do not find any admission or act by the appellee subsequent to the time the appellant informed him that he was not insured which has in any way affected his rights against the appellant. The settlement which was made with Mrs. Sheffield, another party involved in the December 1965 wreck, was actually made by the appellant, not by the appellee. The appellant contends that the settlement was made with money paid to the appellant by the appellee for his insurance renewal. The appellant asserts that this money had never been turned over to Hartford by him. The appellee also clearly explained that he advanced $1,800 to Mrs. Harris because Mrs. Harris held a judgment against him in the sum of $7,000, because of the pressing need of Mrs. Harris for the money to cover expenses and because of the possibility of protracted legal action in determining who was ultimately liable. The appellee also explained that he settled his May 1966 accident with Mrs. Johnson because he was afraid that, in view of the previous accident, the insurance company would cancel his policy. After due consideration of all of the dealings between the appellant and the appellee, we are convinced that the appellee did not waive any rights which he might have against the appellant, but rather that he properly pursued and made timely assertion regarding his rights.
We will next consider together the second and third assertions of the appellant, which are that the appellee did not make any attempt to mitigate damages and that the judgment of Mrs. Harris against the appellee is void. All parties to the *376 case at bar stipulated to the judgment of Mrs. Harris against the appellee. The attorney for the appellant stated that he was agreeing only to have the judgment placed in evidence without going through the usual formalities of its introduction; he specifically retained the right to question its accuracy or validity. A judgment so entered by stipulation is not necessarily sufficient to form the.basis of the application of the doctrine of res judicata upon which the second judgment may rest. Viator v. Stone, 201 Miss. 487, 29 So.2d 274, sugg. of error overruled 29 So.2d 658 (1947). A judgment imports verity, and on collateral attack, every presumption of law is in favor of the judgment. McIntosh v. Munson Road Mach. Co., 167 Miss. 546, 145 So. 731 (1933); and Martin v. Miller, 103 Miss. 754, 60 So. 772 (1912). A consent judgment, which is in substance a contract between the parties, may be entered upon the record with the approval of the court. Watson v. United States, 34 F.Supp. 777 (D.C.N.C.1940). [Even though the judgment entered recites that the Court upon a writ of inquiry “heard and considered both oral and documentary evidence”] the record in the case at bar is not clear as to whether the Court merely entered an agreement between the appellant and the appellee or whether the Court determined the amount of damages upon a writ of inquiry. The appellee’s attorney stated that there was a writ of inquiry, but there is no other testimony to that effect; to the contrary, both the appellee and Mrs. Harris testified that they had not appeared in court in the previous case. The appellant’s attorney asserts that no writ of inquiry was issued. Regardless of the answer to this question, as we shall see, the result would be unchanged.
The rules applicable to the collateral attack of a judgment apply to a consent judgment to the same extent that they apply to any other judgment. 49 C.J.S. Judgments § 403 (1947) and see also cases in n. # 68. A judgment, such as the present one, which is valid on its face can only be attacked on the grounds of fraud or collusion. Krebs v. Bradley, 190 So.2d 886 (Miss.1966). The burden of proof is upon the party attacking a judgment, in the case at bar, the appellant. Piqua Sav. Bank v. Copiah Hardware Co., 146 Miss. 581, 111 So. 836 (1927). The facts necessary to avoid a judgment will not be imputed by inference, unless the conclusion is completely and obviously inescapable. Scott Co. v. Dubois, 158 Miss. 245, 130 So. 106 (1930). We must conclude that the appellant, upon whom the burden rested, did not set forth and prove that there was legal fraud or collusion involved in the previous judgment. No proof was presented as to the amount of damages sustained by Mrs. Harris or to show any bad faith on the part of the appellee in arriving at the figure of $7,000. Stepp v. Stephenson, 146 Miss. 468, 111 So. 747 (1927), which was cited by the appellant, is clearly distinguishable from the case at bar because there was a default judgment entered in the Stepp case, supra, and because the amount of damages in that case was not a sum certain and had not been arrived at by agreement between the parties as was the judgment in the case at bar which was entered with the consent of both parties. It should also be noted that this question was raised in the Stepp case, supra, on direct appeal. For the foregoing reasons, we find no merit in the appellant’s second and third assertions.
The appellant next asserts that the question of settlement was one of fact for determination by a jury. We cannot agree with this contention. Although Mississippi does not use the scintilla rule, but exacts a higher degree of proof, there is not even a scintilla of evidence to support the appellant’s contention. Both parties to the agreement for the payment by the appellee to Mrs. Harris of $1,800 testified unequivocally that this was only an advance on the judgment, which was to go for immediate and pressing expenses incurred by Mrs. Flarris as a result of the wreck. Although the appellant asserts that this *377 payment was made as a complete settlement of the claim which Mrs. Harris had against the appellee, there is not one shred of proof to validate the appellant’s contention and, therefore, there was no question of fact left for determination by the jury. Mere assertions are not sufficient alone, but must be supported by proper proof. It is to be noted that there is no proof in the record as to the extent of damage and injury suffered by Mrs. Harris which would substantiate the appellant’s assertion that the $1,800 payment constituted full settlement of Mrs. Harris’ damages.
The last contention appellant urges is that the appellee is in fact covered by Hartford because Hartford failed to send notice of cancellation as required by the rules of the Assigned Risk Bureau. As neither the appellant nor the appellee has appealed as to Hartford, only limited consideration may be given to their part in this suit. The appellant urges that he is not liable because Hartford gave no notice of non-payment of premium as required by the rules promulgated under authority of section 8285-35, Mississippi Code 1942 Annotated (1956), and more specifically under section 15 of the Mississippi Automobile Assigned Risk Plan which reads in part: “If the applicant fails to pay the premium stipulated by the carrier, the carrier shall so notify the Plan with copy to the producer of record.”
The renewal notice which Hartford sent to both the appellant and the ap-pellee unambiguously stated that no further notice would be sent to the appellant or appellee and that the policy would lapse unless payment was made by the specified date. Furthermore, the appellee did not mail his payment directly to Hartford, but paid it to the appellant as he was directed to do by the renewal notice. We must conclude that the appellant, who is the producer as contemplated in section 15, cannot complain of or be relieved by his failure to deliver the paid premiums to the insurance carrier, or by the insurer’s failure to notify the producer for the reason that the carrier had already notified the insured and the producer that the policy would not be renewed unless timely payment of premium was made and that further notice would not be given. We can only conclude that section 15 was not put into effect to remind the broker to forward premiums collected by him to the insurance company, but for other reasons obvious on its face. It would be a hard rule indeed which would allow the producer to prevail when he has failed to forward the paid renewal premiums to the insurer.
We find no error in the judgment of the lower court. For the foregoing reasons, that judgment is affirmed.
Affirmed.
GILLESPIE, P. J„ and JONES, INZER and ROBERTSON, JJ„ concur.