723 So.2d 1200 (1998)
Samuel BRAY, Appellant,
v.
CITY OF MERIDIAN, Appellee.
No. 97-CA-00259 COA
Court of Appeals of Mississippi.
November 24, 1998.
*1201 Rogers J. Druhet III, Meridian, Attorney for Appellant.
F.E. McRae, III, West Point, J.L. Prichard, Meridian, Attorneys for Appellee.
Before BRIDGES, C.J., HINKEBEIN, and KING, JJ.
BRIDGES, C.J., for the Court:
¶ 1. The Circuit Court of Lauderdale County denied Samuel Bray's request for a preliminary injunction to prevent the City of Meridian from demolishing the condemned structure located at 1916 20th Street. Bray asserts he was denied due process and the City of Meridian should be directed to grant Bray an extension of time in which to make the necessary repairs to the substandard structure. Finding Bray's assignments of error to be without merit, we affirm.

FACTS
¶ 2. On May 9, 1990, the City of Meridian condemned the remains of a brick structure located at 1916 20th Street for failing to meet the minimum standards of housing adopted by the City Council on July 19, 1967. Eleven violations were noted by the building inspector during her initial inspection on April 25, 1990.
¶ 3. The property owners, Samuel and Dorothy Bray, were notified by certified mail, return receipt requested, of the hearing scheduled for May 23, 1990, to give the Brays an opportunity to show cause why the specified repairs and/or demolition should not be completed. A waiver of the hearing and a lis pendens notice were mailed with the complaint. The certified mail receipt was signed by Dorothy Bray on May 16, 1990.
¶ 4. The city building official found the Brays had waived their right to a hearing and entered an order on May 24, 1990, whereby Samuel and Dorothy Bray were directed to repair the structural defects to meet the minimum standards of housing or demolish the structure on or before June 24, 1990. The order further stated, in the event the Brays failed to do so, the City of Meridian could demolish and remove the building at the expense of the Brays, and a lien would be impressed on the real property to secure the payment of all expenses of removal. The Brays received a copy of the order as evidenced by the certified mail receipt signed by Dorothy Bray on May 25, 1990.
¶ 5. The Brays did not repair or demolish the structure by the deadline set in the order.
¶ 6. The record shows the City took no further action with regard to the property until 1992, when the City issued Samuel Bray a building permit to repair the subject structure. On November 30, 1992, a stop work letter was hand delivered to Bray stating that the repair work did not meet the minimum standards of the Southern Standard Housing Code. On December 1, 1992, Bobby Vance, a building inspector, told Steve Phillips, Bray's contractor, what corrections were necessary to the repair work for the structure to comply with the code. On December 3, 1992, Vance and Ward Ford met with Bray and Phillips to discuss the roof on the house. According to the notations in the City's file, Bray also was asked "to clean out house so [the city building inspectors] could get inside the house to inspect for [sic] what needs to be done." The building permit expired without the necessary repairs being made to the structure.
¶ 7. On October 25, 1994, the City notified Bray that unless he showed "earnest intent" to demolish the condemned building or to correct the deficiencies of the building to meet the minimum requirements of the standard housing code of the City by November 15, 1994, the City would advertise for bids for the demolition work to the structure. Samuel Bray received this "last notice" letter on *1202 October 27, 1994, as evidenced by his signature on the certified mail return receipt.
¶ 8. The City's case file indicated on October 10, 1995, there had been "no change since LPN [lis pendens notice]."
¶ 9. Bray testified he requested and received a second building permit for the structure at 1916 20th Street in May or June 1996. Again, Bray allowed the permit to lapse without making the necessary repairs when he "got busy and just couldn't get to it."
¶ 10. Samuel Bray testified that his wife, Dorothy, dealt with the contractors hired to make the repairs. Bray worked on out-of-state projects for three or four months at a time, returning to Meridian for infrequent visits during the course of a job. Bray testified he expended about $2,000 for materials to repair the house and $600 to prepare the site for the repair work.
¶ 11. Bray stipulated the gutted house was uninhabitable and in need of repair. The record revealed the house, vacant for about six or seven years, had no roof, no flooring, no interior walls, and only one brick wall which was supported by timber to keep it from falling.
¶ 12. Mary Ruth Sharp, a city building official, testified she verbally notified Samuel Bray on October 23, 1996, that the City Council would consider the demolition of the structure at its November 5, 1996 meeting, and that the City planned "to demo (sic) house [at 1916 20th Street] this fall." The demolition was approved by the City Council at its January 1997 meeting.
¶ 13. On January 28, 1997, Bray requested a temporary restraining order and preliminary injunction to prevent the City of Meridian from razing the structure located at 1916 20th Street. The City agreed to refrain from taking any action to destroy the property until the matter could be heard.
¶ 14. After considering the evidence presented at the hearing on the merits, the trial court dissolved the temporary restraining order previously entered, denied Bray's request for a preliminary injunction, and dismissed the case finding:
(1) The City had notified Bray of the necessary repairs to the structure located at 1916 20th Street by certified mail on May 9, 1990, May 24, 1990, and October 25, 1994, and through personal conversations with representatives of the City on November 30, 1992, December 1, 1992, and December 3, 1992. Therefore, Bray had proper notice of the City's intention to demolish the structure unless the necessary repairs were made.
(2) The dilapidated structure had not been repaired despite repeated requests and the issuance of two building permits to Bray during the six-year period between the condemnation hearing and Bray's request for a preliminary injunction.
(3) Bray failed to show good cause for his failure to repair or demolish the building during the time given by the City. As reasons for his inaction, Bray stated he had been hospitalized for one or two days, maybe up to a week on several occasions; he had hired two different contractors to make the repairs, but both left town taking his money without making the repairs; he was too busy on out-of-state projects; and the repairs to the structure at 1916 20th Street were not a priority.
¶ 15. On appeal, Bray argues he was not served with a copy of the initial complaint condemning his property, the hearing on the condemnation of the structure was held without notice, and the trial judge improperly denied him equitable relief.

LEGAL ANALYSIS AND DISCUSSION
¶ 16. On appeal, this Court will respect the factual findings of a circuit judge trying a cause without a jury when the findings are supported by reasonable evidence in the record and are not manifestly wrong. Newsom v. Newsom, 557 So.2d 511, 514 (Miss.1990); Kight v. Sheppard Building Supply, 537 So.2d 1355, 1358 (Miss.1989); Rives v. Peterson, 493 So.2d 316, 317 (Miss. 1986).
¶ 17. In proceeding to demolish the abandoned substandard building and assessing the costs incurred as a lien against the subject property, the City of Meridian acted *1203 pursuant to Miss.Code Ann. § 21-19-11(1) (Rev.1990):
The governing authority of any municipality is hereby authorized and empowered, on its own motion ... to give notice to the property owner by U.S.registered mail or certified mail two (2) weeks before the date of a hearing, ... to determine whether or not any parcel of land is in such a state of uncleanliness as to be a menace to the public health and safety of the community. If, at such hearing, the governing authority shall, in its resolution, adjudicate such a parcel of land in its then condition to be a menace to the public health and safety of the community, the governing authority shall, if the owner does not do so himself, proceed to clean the land, by the use of municipal employees or by contract, by ... removing ... dilapidated buildings and other debris;.... Thereafter, the governing authority may, at its next regular meeting, by resolution adjudicate the actual cost of cleaning the property and may also impose a penalty in an amount not to exceed twenty-five percent (25%) of such actual cost. The cost and any penalty may become a civil debt against the property owner, or, at the option of the governing authority, an assessment against the property. The cost assessed against the property means the cost to the municipality of using its own employees to do the work or the cost to the municipality of any contract executed by the municipality to have the work done....
¶ 18. A municipality's statutory authority to demolish an unfit and unsafe building was affirmed by the Mississippi Supreme Court in Bond v. City of Moss Point, 240 So.2d 270, 273 (Miss.1970):
It is a sensible and reasonable rule that where the property owner, after reasonable notice provided for in an ordinance, fails and refuses to either repair or remove an unsafe and unfit building that constitutes a public nuisance, that the municipality can remove it at the owner's expense.
¶ 19. Bray contends his due process rights were violated because the City failed to serve him with a copy of its complaint and failed to notify him of any hearing on the complaint prior to the issuance of the City's order requiring the structure located at 1916 20th Street be demolished or repaired to render it fit for human habitation, use or occupancy, on or before June 24, 1990. We find this assignment of error to be without merit.
¶ 20. "Generally, personal service means the actual delivery of the process to the defendant in person, or someone who is authorized to receive it in his behalf." Ellis v. Milner, 194 So.2d 232, 235 (Miss.1967). The complaint was served by certified mail to the property owners, Samuel and Dorothy Bray. Dorothy Bray, Samuel Bray's wife and the co-owner of the subject property, signed the certified mail receipt showing that she received the complaint, waiver and lis pendens. As the spouse of Samuel Bray and as a co-owner of the property, Dorothy Bray, by custom and practice, was vested with apparent authority to the accept the service of process on behalf of Samuel Bray. Williams v. Kilgore, 618 So.2d 51, 56 (Miss.1992).
¶ 21. The City's complaint setting forth the reasons for the condemnation of the abandoned building and notifying the property owners of the public hearing was mailed to the Brays on May 9, 1990. The public hearing was scheduled for May 23, 1990. The Brays received the notice on May 16, 1990, as evidenced by Dorothy's signature on the certified mail receipt. Thus, Bray was provided the two weeks' written notice of the condemnation hearing required by Miss.Code Ann. § 21-19-11(1) (Supp.1998).
¶ 22. Bray's procedural attack of the condemnation order is untimely. Miss.Code Ann. § 21-19-11(4) (Supp.1998) provides "[a]ll decisions rendered under the provisions of this section may be appealed in the same manner as other appeals from municipal boards or courts are taken."
¶ 23. The appeal procedure for the City's condemnation order is set out in Miss.Code Ann. § 11-51-75 (1972):
Any person aggrieved by a judgment or decision of the board of supervisors, or municipal authorities of a city, town, or village, may appeal within ten (10) days *1204 from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision, and may embody the facts, judgment and decision in a bill of exceptions which shall be signed by the person acting as president of the board of supervisors or of the municipal authorities. The clerk there of shall transmit the bill of exceptions to the circuit court at once, and the court shall either in term time or in vacation hear and determine the same on the case as presented by the bill of exceptions as an appellate court, and shall affirm or reverse the judgment.... Any such appeal may be heard and determined in vacation in the discretion of the court on motion of either party and written notice for ten (10) days to the other party or parties or the attorney of record, and the hearing of same shall be held in the county where the suit is pending unless the judge in his order shall otherwise direct.
¶ 24. Bray's due process argument that the City's order is void was raised for the first time at the February 1997 hearing on his request for a temporary restraining order and preliminary injunction. On May 25, 1990, the city building official found that the property owners (1) had been served with the complaint and notice as required by law, (2) had been advised of the hearing on the complaint, and (3) had executed a waiver of notice. The Brays were ordered to demolish or repair the building so as to render it fit for human habitation, use or occupancy. Pursuant to the order, if the Brays did not repair the property by on or before June 24, 1990, the City would undertake to repair or demolish the structure itself and would claim a lien against the property for the costs incurred by the City. Dorothy Bray signed the certified mail receipt showing that the Brays received a copy of the order on May 25, 1990.
¶ 25. The specific findings in the City's condemnation order that the Brays had received proper notice of the hearing and had waived their right to be heard at the condemnation proceeding could be attacked only on direct appeal to the circuit court within the time prescribed by statute. First Jackson Securities Corp. v. B.F. Goodrich Co., 253 Miss. 519, 539, 176 So.2d 272, 281 (1965).
¶ 26. Failure to protest a final decree by direct appeal bars an appellant from attacking the judgment collaterally unless the judgment is attacked on the grounds of fraud or collusion. Bolls v. Sharkey, 226 So.2d 372, 376 (Miss.1969).
¶ 27. Bray contends the record fails to show he had actual notice of the City's condemnation hearing and that he waived his right to attend the hearing. In Whitley v. Towle, 163 Miss. 418, 425-26, 141 So. 571, 572 (1932), the supreme court stated:
In a direct attack on a decree it is, of course, competent to show that there was no service of summons, but in a collateral attack, as is here made, unless the record affirmatively shows to the contrary, all jurisdictional facts are conclusively presumed to have existed, including the proper service of process. It is not enough that the return of service is merely missing from the record  and that is all that is shown here.
¶ 28. The city building official made specific findings that the Brays had been properly served with process and had waived their right to a hearing on the condemnation of the subject building. Failing to appeal the City's condemnation order to the Circuit Court of Lauderdale County within the statutory ten-day period, Bray is procedurally barred from attacking the validity of the order. Jones v. Chandler, 592 So.2d 966, 970 (Miss.1991).
¶ 29. The record is replete with the City's repeated attempts to get Bray either to repair or demolish the dilapidated structure. After the abandoned house was condemned, Bray requested and was granted building permits on two separate occasions to make the necessary repairs to bring the structure in conformance with the minimum requirements of the standard housing code. Both permits expired before the repairs were made. Additionally, Bray was notified of the continued substandard condition of the structure through numerous correspondence and personal conversations with building officials.
*1205 ¶ 30. The trial court specifically found that "based upon what happened between [1990 and the date of the hearing], there is no question Mr. Bray had proper notice of the City's intention to demolish that house. Any other finding would be ridiculous." Thus, Bray's argument that the City failed to give him adequate notice of the City's intention to demolish the house due to its substandard condition is without merit.
¶ 31. The record shows that the dilapidated condition of the structure was a threat to the public safety, and after reasonable notice and opportunity, Bray refused to remedy the dangerous condition by repairing or removing the abandoned structure. We find the trial court properly denied Bray's request for preliminary injunction. There is no merit to this assignment of error.
¶ 32. After a careful study of the facts and the record in this case, this Court cannot say that the trial court manifestly erred by denying Bray's request for a preliminary injunction. For the foregoing reasons, the decision of the trial court is affirmed.
¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN and THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, PAYNE, and SOUTHWICK, JJ., concur.