852 So.2d 578 (2002)
Gary W. MORRISON, Appellant,
v.
MISSISSIPPI DEPARTMENT OF HUMAN SERVICES, Appellee.
No. 2001-CA-01088-COA.
Court of Appeals of Mississippi.
November 12, 2002.
Rehearing Denied March 11, 2003.
*579 Terry Lynn Wood, Corinth, attorney for appellant.
Vickie R. Mitchell, Corinth, attorney for appellee.
EN BANC.
SOUTHWICK, P.J., for the court.
¶ 1. Gary W. Morrison was found in contempt of a child support modification order by the Alcorn County Chancery Court. He appeals, arguing that he had not received proper notice of the hearing at which the modification occurred. We disagree and affirm as to the general validity of the judgment. However, we reverse and render that part of the judgment that required Morrison to pay the expenses necessary for his son to obtain a master's degree.

FACTS
¶ 2. Annie R. Windom bore a son, Christopher, in 1974. An order of affiliation was entered in 1988. It stated that Gary Morrison admitted paternity and agreed to pay child support of twenty five dollars per week, increased to fifty dollars per week seven months later. Morrison also agreed *580 that Christopher would not be considered emancipated until he obtained a four-year college degree. The parents agreed to share the educational expenses of a mutually agreed-upon secondary institution.
¶ 3. In December 1993, Windom filed a petition for contempt and modification of the 1988 support level. Christopher had begun attending college; Morrison allegedly failed to make some child support payments. A proper summons addressed to Morrison in Georgia was issued by the chancery court clerk on January 5, 1994, but the record does not contain a return of service.
¶ 4. The petition for contempt and modification was heard on January 19, 1994. Morrison did not attend nor did his counsel. The chancellor found that Morrison had been properly served, judged him in contempt, and awarded Windom $11,683.04 in support and expense arrearage. Child support was increased to $125 per week until Christopher obtained a master's degree, provided that he remained enrolled full-time and maintained sufficient grades.
¶ 5. In February 1994, the Mississippi Department of Human Services filed a petition with its Georgia counterpart for entry of a Uniform Reciprocal Enforcement Support Act order. This order directed Morrison to send all future payments to DHS for distribution to Windom. In September 1995, an order to withhold support from Morrison's wages was issued by the chancellor and forwarded to Morrison's Georgia employer. The employer never complied with the order.
¶ 6. Christopher left college in April 1999. In November 1999, a second order of withholding was issued to Morrison's new employer. Morrison did not attend the hearing on the matter, nor was he represented by counsel. The order directed the new employer to withhold fifty dollars per week for payment of the arrearage and forward those funds to DHS. A second petition for contempt was filed by DHS in March 2000. Morrison answered this petition, filing a motion to dismiss that claimed that he never received service of process on the 1994 petition for contempt and modification and that the statute of limitation on the collection of child support had expired.
¶ 7. A hearing on Morrison's motion to dismiss was held in June 2000. Morris was represented by counsel. The chancellor denied the motion in July 2000, finding that Morrison had been properly served by mail in 1994. A hearing on the DHS contempt motion was held in May 2001. By order entered June 12, 2001, the chancellor found Morrison in willful contempt, awarded $46,693 in back support and expenses, and ordered Morrison jailed for ninety days. However, the sentence was to be held in abeyance upon Morrison's payment of $1500. Morrison was also to pay $500 per month toward reducing the arrearage. Another order of withholding was issued to his employer.
¶ 8. Morrison has appealed.

DISCUSSION

a. Motion to dismiss the 2000 contempt petition.
¶ 9. Morrison assigns three specific points of error to the decision to deny his motion to dismiss the March 2000 petition for contempt. First, he asserts that the motion should have been granted because it was based upon his noncompliance with the 1994 order. Morrison argues that he was never served with notice of the 1994 contempt hearing and that the judgment is invalid. If that is so, he could not be held in contempt for failing to comply with it.
¶ 10. In child support cases, personal jurisdiction over a party is had by *581 compliance with the provisions of Mississippi Rule of Civil Procedure 81(d)(5), which requires issuance of a summons commanding the defendant to appear at a particular time and date. The record indicates a Rule 81 summons was issued by the Alcorn County Chancery Court Clerk. No return of service nor notation on the docket of a return appears.
¶ 11. Morrison waited six years to attack the 1994 contempt and modification order. This constitutes a collateral attack on the former judgment.
In a direct attack on a decree it is, of course, competent to show that there was no service of summons, but in a collateral attack, as is here made, unless the record affirmatively shows to the contrary, all jurisdictional facts are conclusively presumed to have existed, including the proper service of process. It is not enough that the return of service is merely missing from the record and that is all that is shown here.
Bray v. City of Meridian, 723 So.2d 1200, 1204 (Miss.Ct.App.1998), quoting Whitley v. Towle, 163 Miss. 418, 425-26, 141 So. 571, 572 (1932). In between its origin and our quoting, that same language was again employed by the Supreme Court. Case's Will v. Case, 246 Miss. 750, 761, 150 So.2d 148, 152 (1963).
¶ 12. To set aside the six-year old judgment in 2000, Morrison needed to make an affirmative showing of failure to serve. Among such affirmative showings would be a returned envelope with the summons showing that it was undeliverable, or a return of service from a process server that the defendant could not be found or that the address was incorrect. An "affirmative" showing of failure to serve as required for a collateral attack does not mean simple silence in the record. That is not an "affirmative"defined as "that which declares positively, ... the opposite of negative." BLACK'S LAW DICTIONARY 60 (6th ed.1990). If declaring affirmatively is the opposite of declaring negatively, then silence is in the precise middle. Nothing is declared at all. The sounds of silence are not the equivalents of declarations.
¶ 13. Not only is there no return of service in this record, there is also no docket entry demonstrating service. However, had there been a docket entry, no presumption of service would be needed. The Supreme Court long ago stated that a "record by a justice of the peace on his docket of the issuance and return of process is as much entitled to be accepted as true, as would a copy of the summons and the return on it, certified by him." Hughston v. Cornish, 59 Miss. 372, 374 (1882). The point is not often contested, but that principle has been cited more recently. E.g., Walton v. Gregory Funeral Home, 170 Miss. 129, 154 So. 717, 719 (1934). The absence of the actual return, when the docket shows service was made, is no defect for which a presumption is required.
¶ 14. Therefore, the presumption of regularity applies on facts just as we face here, namely, a summons was issued but nothing is in the record regarding service or failure of service. Indeed, the reported decisions on which Bray relied appear to have the same facts as ours. In Towle, this was said: "the record herein fails to show that the summons to appellee, to appear before the chancellor at the time and place hereinabove mentioned, was served on appelleethe return of the service is missing from the record." Whitley v. Towle, 141 So. at 572. We do not know what that could mean that would be more substantial than in the present case, unless there was a docket entry showing proper service and only the return itself was missing. The presence of a notation on the *582 docket of a return would seem worth mentioning, but nothing in the opinion suggests such evidence existed.
¶ 15. Towle said that an earlier case had already "settled" that the absence of a summons from the record was of no consequence in a collateral attack when there had been a finding of service:
the judgment expressly adjudicates that it appeared to the court, which rendered it, that the defendant had been personally served with process, and that adjudication is conclusive in a collateral attack; for in such an attack, whether the court had the proper evidence before it on which to base an adjudication that the defendant had been served with process cannot be inquired into.
Federal Reserve Bank of St. Louis v. Wall, 138 Miss. 204, 103 So. 5, 6 (1924), cited in Whitley v. Towle, 141 So. at 572. In the present case, there is a 1994 finding of service, and in 2000 a renewed finding by the same judge that service was made. The service, quite simply, "is merely missing from the record." Bray, 723 So.2d at 1204. The collateral attack fails.
¶ 16. It could be argued that the civil rules have changed caselaw that dates from 1932 and was reiterated in 1963. When this Court quoted this old case in 1998, perhaps we overlooked needed modernization. Collateral attacks are now brought as Rule 60 motions, though a judgment can also be attacked in related litigation. However, we find no basis on which to abandon this presumption of correctness. If a judgment that is void is permanently subject to being set aside, there is a need for rigid standards of proof of the basis for the overturning. The longexisting rule regarding presumptions is just as viable, indeed just as vital, after the adoption of the Civil Rules in 1982. Otherwise, as the passage of time from a judgment continues, it may become increasingly difficult to prove the validity of such matters as service. Regardless of the reasons that the record may not reflect what happened, affirmative proof that the needed event failed to happen is critical.
¶ 17. We note a recent case from this Court. Reichert v. Reichert, 807 So.2d 1282, 1288 (Miss.Ct.App.2002). Reichert may be inconsistent with Bray and more importantly with Bray's Supreme Court precedents. To the extent Reichert reaches a different conclusion than set out here, that difference is disavowed. The dissent finds Reichert distinguishable, and we merely note it today.
¶ 18. Morrison relies upon two cases to support his claim that despite authorities such as just described, actual return of service is necessary to establish personal jurisdiction. Caples v. Caples, 686 So.2d 1071 (Miss.1996); Powell v. Powell, 644 So.2d 269 (Miss.1994). In Caples, the defendant was served with a Rule 81 summons which failed to state the date and time to appear before the court. The summons was defective upon its face and therefore ineffective to exert personal jurisdiction over the defendant. Powell concerned a defendant served with summons under Rule 4 of the M.R.C.P. rather than Rule 81. Neither of these cases is particularly applicable to Mr. Morrison's argument in this case.
¶ 19. Morrison also asserts that he should not be held in contempt of the 1994 modifications because the terms of the 1988 order of affiliation were not followed by Windom. The affiliation order provided that Christopher would attend a mutually agreed-upon secondary school, but he was never consulted over the choice of college the child would attend. The chancellor made no findings of fact upon this claim. In some situations, the Supreme Court has devised specific standards that *583 must be applied in the exercise of discretion, such as for the initial determination of child support or for child custody. Gray v. Gray, 745 So.2d 234, 240 (Miss. 1999); Powell v. Ayars, 792 So.2d 240, 244 (Miss.2001). Outside of those specific situations, we assume the resolution of disputed facts in favor of the decision. Bredemeier v. Jackson, 689 So.2d 770, 777-78 (Miss.1997).
¶ 20. There is significant evidence in the record to sustain that Morrison was aware of the school his son was attending. Morrison in his testimony admitted that he had contact with Christopher during his college years through attendance at family reunions and funerals. He was able to give Christopher his Georgia telephone number. Throughout this period of time, Morrison made no objection. Morrison's lack of objection is consistent with approval.

b. Emancipation of Christopher
¶ 21. Morrison's second point of error is that he should not have been required to pay child support beyond Christopher's twenty-first birthday in December 1995. He also asserts that he should not be required to pay support and expenses through Christopher's completion of a graduate degree.
¶ 22. For purposes of child support orders, the age of majority in this state is twenty-one. Nichols v. Tedder, 547 So.2d 766, 770 (Miss.1989). A court may not require support beyond the age of majority. Id. However, the parents by private agreement may create an enforceable obligation for support of a child beyond the age of majority. Id. Where a parent contracts to provide such support, we will require that he honor it. Crow v. Crow, 622 So.2d 1226, 1230 (Miss.1993).
¶ 23. Morrison contends that for such a provision to be enforceable, it must be the subject of a separate, signed contract, not merely included in the terms of the order of affiliation. Absent such a separate document, he states that he has no obligation beyond Christopher's twenty-first birthday.
¶ 24. None of the authorities cited by Morrison support that a separate contract must exist in order to enforce an agreement for post-majority support. To the contrary, the Supreme Court contemplated that such agreements may take different written form by holding that an agreement incorporated into a divorce decree is as effectively binding as a separate contract. Nichols, 547 So.2d at 770.
¶ 25. While there was no separate contract, Morrison agreed to provide support for Christopher through the pursuit of a four-year college degree and voluntarily signed a written memorialization of that agreement in the form of the order of affiliation. We cannot find that the chancellor abused his discretion by enforcing it.
¶ 26. In addition, Morrison claims that he cannot be held in contempt on the ground that the applicable statute of limitation had expired prior to the filing of the petition for contempt in March 2000. He cites the general limitations statute. Miss. Code Ann. § 15-1-49 (Rev.1995).
¶ 27. The chancellor found the petition for contempt not barred by any statute of limitations because it was not the assertion of a new claim but rather part of an ongoing effort to collect on a judgment against Morrison. The court was holding that this was an action upon a domestic judgment, and that collecting past due child support and expenses would fall within the seven-year period of limitation for enforcement of judgments. Miss.Code Ann. § 15-1-43 (Rev.1995). That statute starts the calendar for suit with the "rendition" of the judgment. In a domestic case, *584 obligations under the judgment arise periodically for years. Here, the child support obligation lasted almost the entirety of Christopher's childhood and then beyond. The 1994 contempt and modification order had obligations that lasted until 1995 when Christopher became twenty one, and then continued until the college support agreement was fulfilled with his receipt of a four-year college degree or Christopher was no longer maintaining satisfactory progress. The chancellor determined that Morrison had no further obligation after Christopher quit college in 1999 without obtaining any degree. We find no error in continuing the obligation that long, and no objection to continuing no longer.
¶ 28. The individual to whom child support is owed is the child. Until the child reaches the age of majority at twenty one, there is no commencement of the statute of limitations for unpaid support. Here, the obligation lasted even longer. The Supreme Court has held that a claim "for back child support may be brought at any time within seven years of the child's emancipation." Varner v. Varner, 588 So.2d 428, 432 (Miss.1991). This claim was timely brought.
¶ 29. Finally, Morrison asserts that he should not be required to adhere to the 1994 modification of the affiliation order calling for continued support through the completion of a master's degree by Christopher. DHS concedes that Morrison never agreed to such an extension and does not intend to seek enforcement of that provision. We repeat that the provision of support beyond age twenty one must be based on a voluntary agreement by the person who is to provide that support. Morrison never agreed to provide for a master's degree. The chancellor declared Christopher emancipated in 1999. There is no further enforceable obligation against Morrison for college support.
¶ 30. THE JUDGMENT OF THE CHANCERY COURT OF ALCORN COUNTY OF WILLFUL CONTEMPT OF COURT IS AFFIRMED; THE JUDGMENT IS REVERSED AND RENDERED INSOFAR AS IT UPHELD THAT GARY W. MORRISON WAS VALIDLY MADE TO PROVIDE FOR THE EXPENSES NEEDED TO OBTAIN A MASTER'S DEGREE. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., THOMAS, IRVING, MYERS AND CHANDLER, JJ., CONCUR. BRANTLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., BRIDGES AND LEE, JJ.
BRANTLEY, J., dissenting:
¶ 31. I recognize the importance of the presumption of correctness of judgments and do not attempt to reverse such precedent, but in the present case, I respectfully disagree with the majority's application of the presumption. The majority concluded that the record did not establish an affirmative showing to overcome the presumption that, in the 1994 judgment, the chancellor's finding of service by mail upon Morrison was correct. The record was absent of any proof in any form that service in any manner was had upon Morrison in the 1994 judgment. The majority termed this absence of proof as silence and held that such silence could not be considered an affirmative showing to the contrary. Alternatively, I find that the evidence in the record establishes the affirmative showing needed to overcome such a presumption. The record not only fails to contain a document that confirms service by mail, but also demonstrates through the clerk's docket sheet that a Rule 81 summons was only issued, never served. Therefore, the proof of the return *585 of service is not contained within the record. The record wholly contradicts the finding that Morrison was served. How else could Morrison challenge a finding of service by mail other than declaring that notice was not received and demonstrating that the record does not contain any evidence of such act? Furthermore, the record demonstrates that he was not aware of the proceeding for years. Therefore, in this particular case, I am not ready to make the leap that just because a summons was issued, it was received. Notice is a fundamental right which must also be protected. Thus, I would render the 1994 order void, affirm in part the June 2001 order as to the other issues presented, and remand to the chancery court for a recalculation of the amount owed.
¶ 32. In addition, the majority summarily concluded that Reichert v. Reichert, 807 So.2d 1282 (Miss.Ct.App.2002), may be inconsistent with the presumption set forth in Bray v. City of Meridian, 723 So.2d 1200, 1204(¶ 27) (Miss.Ct.App.1998), and its Mississippi Supreme Court precedents. Again, I must disagree. In Reichert, we were consistent with Bray and followed the presumption of correctness set forth, but found that the record affirmatively contradicted the presumption.
¶ 33. In Reichert, the chancellor found jurisdiction prior to her judgment, but did not specify how. Reichert, 807 So.2d at 1287(¶ 18). Service of a Mississippi Rule of Civil Procedure 81(d)(5) summons upon Reichert was required for jurisdiction in the matter, Powell v. Powell, 644 So.2d 269, 274 (Miss.1994), but no Rule 81 summons, no return service of a Rule 81 summons, nor notation on the docket of a return service of a Rule 81 summons appears in the record. Reichert appealed claiming that the chancellor erred and that the judgment was void for a lack of jurisdiction because he was not served with the mandatory Rule 81 summons. We recognized the presumption of correctness as to all jurisdictional facts and looked to see if the record affirmatively contradicted the presumption that Reichert was properly served with a Rule 81 summons.
¶ 34. As stated, the record did not contain a Rule 81 summons or any proof of service of a Rule 81 summons. However, the record did contain a filed proof of service form, which in standard form language stated that a "summons and complaint" were served, but this form did not specify if the summons served was the required Rule 81 summons. Therefore, we looked to see if the mandatory Rule 81 summons was merely missing from the record and if the summons in the standard proof of service form was referring to a Rule 81 summons. Upon further review, the record also contained a petition for contempt, a notice of hearing, and a certificate of service, which were all filed on the same day. In addition, the papers in the record that were returned to the chancery court's clerk's office after service, included only copies of the notice of hearing and petition for contempt. Furthermore, the docket index only stated that a "notice and petition" were executed on Reichert. Thus, the record indicated that the summons referred to in the proof of service form was not a missing Rule 81 summons, but the notice of hearing.
¶ 35. Accordingly, we found that if service was had upon Reichert, the evidence in the record established that he was served with the notice of hearing and not the mandatory Rule 81 summons. Therefore, the evidence in the record affirmatively contradicted the presumption that the required Rule 81 summons existed and was served. We also held that the notice of hearing filed in the record did not comply with the mandatory Rule 81 summons. Consequently, we vacated the judgment *586 because due process required proper notice and the requirements of due process were not met. Bryant v. Walters, 493 So.2d 933, 938 (Miss.1986).
KING, P.J., BRIDGES AND LEE, JJ., JOIN THIS SEPARATE WRITTEN OPINION.