ELLIS, Judge.
Plaintiff has appealed from a judgment rejecting his demands for damages for personal injuries allegedly suffered by him as a result of an electrical shock which went from his thumb up his left arm into his left shoulder and left side of his neck while using a buffing machine during the course and scope of his employment with the American Bank & Trust Company in Baton Rouge, Louisiana.
Plaintiff’s entire cause of action is based upon the following allegations of his petition:
“3. That on or about 3 December 1959 while in the course and scope of his employment at the American Bank and Trust Company in Baton Rouge, Louisiana, Lester Robertson was injured when a defective cord on a buffing machine shorted out causing Lester Robertson to be severely shocked.
“4. That prior to the date of said accident, Home Appliance Service had entered into a contract to repair said buffing machine and the cord thereof.
“5. That on information and belief, Home Appliance Service repaired the said buffing machine in a careless and negligent manner, more particularly, but not exclusively, in that they:
“‘(1) Failed to put a cord heavy enough to carry the load of electricity necessary to run the buffing machine;
“‘(2) They negligently connected the electrically charged wires which *269 carry electricity, so that the short circuit resulted which injured petitioner ;
“‘(3) That the part which was put in by Home Appliance Service was defective, in that it short circuited causing the damage to Lester Robertson.’
"6. That as a result of the aforementioned negligence, petitioner suffered severe, painful and permanent injuries to his body and mind, consisting of contusions, abrasions, shock, bruises, injuries to the mind, injuries of internal nature, injuries to the nerves, injuries to the bones, ligaments, tendons, and muscles and soft tissue of his entire body, including a left brachial plaxus meurities, left shoulder girdle and left upper extremity and left neck muscular atrophy.”
The burden is upon the plaintiff to prove, by a preponderance of evidence and to a legal certainty, the basic acts of negligence committed by the defendant, Home Appliance Service, that they defectively or in a careless and negligent manner repaired the wiring so that it short circuited and as a result plaintiff received an electrical shock and was injured thereby as set forth in his petition.
To prove this, plaintiff offered his testimony and that of two co-employees, who were allegedly present at the time the machine developed a short and plaintiff was allegedly injured. It is shown that on the 12th of October, 1959 the defendant company had rewired this machine. Plaintiff states his hours for cleaning up at the bank were from four P.M. to twelve midnight, and on or about December 3, 1959, during his working hours, he was using this floor buffer; that ordinarily a fifty foot extension was plugged into an outlet in the bank and on the other end was a female plug into which was plugged the male plug on the extension wire on the machine.
Plaintiff and his two co-employees, Davis Rankin and Richard Williams, all testified when the buffer was returned by the defendant company on October 12, 1959 the extension cord, which was estimated as being six to ten inches in length, was brown in color and smaller than the wiring of the extension which had always been on the machine. It was the theory of counsel for plaintiff practically throughout the trial that this small wire which was placed there by the defendant company was not of sufficient size to carry the necessary electricity to operate the machine and for this reason it somehow shorted and burned the insulation off and due to the fact plaintiff had his thumb on the metal portion of the handle the electricity went from there through his arm into his left shoulder and neck thereby causing the injuries.
The plaintiff testified that just before the accident he pressed down on the switch to start the machine and heard a buzzing sound, whereupon he released the switch. He again pressed down on the switch and heard the same sound and again released the switch. When he repeated this process the third time, smoke came from the small brown cord and small pieces of melted copper burned some small holes in his clothing and burned the insulation off the small brown extension cord from the plug to the point at which it entered the switch housing and he received the shock heretofore described through the left thumb, arm, into the shoulder and left side of the neck. The machine was returned to the defendant company, and although the latter had no record of the repairs made to it this is explained by virtue of the fact that the ninety day warranty for the previous rewiring of the machine on October 12, 1959 had not expired and no charge or other entry was made for any work.
Richard Williams, co-employee of the plaintiff who was working in the bank at the time of the alleged accident, testified on behalf of the plaintiff. He stated the extension on the buffer was a brown wire and it *270 had been on the machine since he started working at the bank which was one and one-half years. This testimony is completely inconsistent with the version that the machine had been re-wired on October 12, 1959 at which time the defendant replaced the regular wire with the brown smaller wire.
Davis Rankin, another of plaintiff’s fellow workers, testified after the machine had been repaired by the defendant the cord was brown in color and small,, but he had no idea how much smaller. Neither Williams nor Rankin used the large machine which was involved in the accident.
It is shown that on October 12, 1959 the defendant had its employee E. J. Kern, rewire this floor buffer. This witness testified the large wire which entered the switch housing actually contained three small separately insulated wires, one of which was a positive wire and one a negative wire, which were attached to a switch inside the switch housing and supplied the electricity for the motor. The third small wire was a ground wire and was attached to the frame inside the switch housing and its purpose was to protect the operator. Photographs showing the large wire entering the housing and the manner in which the small wires were attached inside this housing were introduced in evidence. In addition, the machine had an attachment known as a strain reliever, the purpose of which was to prevent the wires from being pulled loose. This strain reliever could be tightened but Kern explained the machine could not have been repaired with wire which was smaller in diameter than that with which the machine was originally equipped as the strain reliever would not hold a smaller wire in place and it would have pulled out and broken the switch or pulled the wires off the switch. The purpose of the strain reliever was to prevent these wires from being pulled loose. There was a strain reliever for small wires but Kern had never changed the fitting on the machine. He also testified he would not have put a different colored or brown wire on this machine which would have been a different color from the remainder of the wire, and also the wire for the machine came with insulation in either gray or black. In addition, he felt the bank would not want a machine with two colored insulation on the wire. Kern was corroborated in his testimony that a small wire could not have been used with this strain reliever and fitting on the machine in question by Mr. Caulfield and Professor Ramsey, who was offered as an electrical expert. In addition, Mr. Caulfield, the owner of the defendant company,, further testified had he replaced the short piece of extension cord, which plaintiff testified was done, with a brown and smaller cord in place of the usual larger black cord on October 12, 1959, he would have made a charge for same and had he changed the strain reliever and put a small one on he would have made a charge for that. In fact, this witness testified he had never seen a brown cord on such a machine. It was his recollection as to the re-wiring job of October 12,, 1959 that the cord had been pulled out and it was re-connected back to the switch and the strain reliever put back on it.
The record further reveals that plaintiff, who used the big machine, and his two co-employees who used smaller machines, were not always careful in the use of the machines. They would put undue stress and strain on the cord by using it so that the cord was pulled or stretched at times, and the expert on behalf of the defendant company believed by doing this the cord finally wore where it came through the strain reliever and pulled the two wires loose from their connection in the switch which caused the short and arcing between the wires outside the switch housing and also caused the smoke and sparks described by the plaintiff as burning small holes in some of his clothing.
In line with the above, Jules L. Rebelle, III, Vice President of the American Bank *271 & Trust Company, testified on behalf of the plaintiff and on cross examination was questioned and gave answers as follows:
“Q. Are you familiar with the fashion in which Lester took care of the equipment that he used?
“A. Lester came under my supervision around July of 1959. Lester did not take care of any of the equipment that he worked with — •
“BY THE COURT:
“Q. What do you mean by that?
“A. He did not clean them. When working with the equipment, he was very rough and he — I have seen him plug one of the machines in and stretch it as far as it could go from the plug where it was connected. He would take and pull the plug from the wall. He would take the wire and pull the wire instead of reaching over for the plug itself. The equipment was constantly — it was always dirty. It was never clean.
"Q. Was that his duty?
“A. It would be his duty to maintain the equipment, that’s right.”
We have carefully read and considered this nine hundred and thirty-six page record and are satisfied the plaintiff has utterly failed to. prove by a preponderance of the evidence or to a legal certainty that the defendant, Home Appliance Service, repaired this buffing machine in a careless and negligent manner by failing to put a cord heavy enough to carry the load of electricity necessary to run the buffing machine or negligently connected the electrically charged wires which carry electricity so the short circuit resulted which injured the plaintiff, or that any part which might have been put in by Home Appliance Service was defective, merely because it^short circuited.
Furthermore, from this record we do not believe he has proven he received any severe shock. It is shown at the time the machine short-circuited (if it did) the plaintiff was wearing heavy rubber shoes, working on a terrazzo floor, the latter was not wet at all, the machine was grounded, and in the opinion of the electrical experts under these facts he would not have received any shock. In addition, he continued working until January 10th, 1960 when he reported to the hospital for pain in his shoulder and neck.
The medical testimony preponderates that what the plaintiff really had was arthritis with nerve root involvement in his shoulder and back which was caused by degenerative process and had not been aggravated by any electrical shock. Only one doctor testified if the plaintiff was telling the truth and had received a severe electrical shock it could have caused a kind of spasm or intense contraction of the muscles and ligaments in his shoulder and neck to such an extent it aggravated the pre-existing arthritis with nerve root involvement. We do not believe he received any severe electrical shock or that there was any causal connection between his condition and the accident with the machine.
Plaintiff was examined by a psychiatrist who came to the conclusion, and so testified, that he was suffering from traumatic neurosis as a result of the accident. From reading the record we find the plaintiff was an able witness, never lacking for an answer, and his testimony fails to reveal the slightest neurosis to this court. While we do not mean in the least to impugn the honesty or motives of the psychiatrist, the latter based his opinion upon the subjective complaints as told to him by the plaintiff. There were sound medical reasons and evidence given by other doctors as a basis for the condition in plaintiff’s shoulder and left side of his neck which were totally disconnected with the so-called accident. We do not believe he has proven he is suffering from traumatic neurosis.
*272 Plaintiff has not borne the burden of proving the defendant company was guilty of the negligence alleged as the basis for his recovery, nor that his condition in the shoulder and neck or any disability resulting therefrom had any causal connection with the alleged accident, nor that he is suffering from traumatic neurosis as a result of the alleged accident.
For the above and foregoing reasons, the judgment of the lower court is hereby affirmed.
Affirmed.