357 So.2d 946 (1978)
John W. McGOWAN
v.
James E. McCANN.
No. 50203.
Supreme Court of Mississippi.
April 26, 1978.
*947 David K. McGowan, Jackson, for appellant.
Adams, Forman, Truly, Ward, Smith & Bramlette, Everette Truly, R. Kent Hudson, Natchez, for appellee.
Before SMITH, P.J., and LEE and COFER, JJ.
SMITH, Presiding Justice, for the Court:
The litigation, out of which this appeal arose, was begun by appellant, John W. McGowan, by the filing of a bill of complaint in the Chancery Court of Adams County, praying that a prohibitory injunction issue, restraining James McCann, appellee, from continuing to dig, construct, enlarge or change a drainage ditch paralleling a road which provided access to oil drilling operations being conducted by McGowan, and that a mandatory injunction issue, requiring McCann to fill-in that portion of the ditch already dug.
McGowan was the owner, by assignment from Humble Oil and Refining Company, of certain oil, gas and mineral leasehold interests in land in Adams County, sometimes referred to as the Norman-Breaux "Swamp." An easement, also owned by Humble, granting it the right to build and maintain an access road for use in servicing oil wells located on the land, was also assigned to and is owned by McGowan. The land itself, encumbered by the leases and subject to the easement, is owned by appellee, James McCann. This land is subject to flooding during a considerable portion of the year; for example, in 1973 the flood waters remained upon the land for as long as 7 months. In times of flood, the road in question sometimes is also flooded.
The road is of sand, gravel and dirt. It is McGowan's only means of access to the wells and is essential to their operation and to their maintenance and repair. Considerable sums of money have been spent by McGowan in constructing and maintaining the road, and its maintenance is a continuing and substantial expense.
McCann purchased the land for farming purposes. At the time of the trial McCann had cleared approximately 7,000 acres and, according to the testimony, had invested some 5 and 1/2 million dollars in the project. The present controversy arose when McCann, in furtherance of his plan to use the land for farming, began constructing or cleaning out a drainage ditch which roughly paralleled McGowan's service road. A ditch following, in the main, the route of the ditch being worked on by McCann, has existed from the time the road was built. The depth of the original ditch is in dispute. Testimony offered by McGowan tends to show that it was no more than the result of the scooping up of earth for use in building up the road, and thus was only a shallow ditch, with gradually sloping sides. Testimony offered by McCann differs with this as far as the nature and depth of the old or original ditch is concerned. McCann and his witnesses describe the old ditch as having been much deeper, and McCann's activities in digging which are sought to be enjoined by McGowan are described as having been no more than a cleaning out of the original ditch which had, over the years, become "silted up."
The ditch which will result from McCann's work will have banks with a 1-1 slope, and apparently will vary in depth from 8 to 12 feet deep. An engineer, testifying for McGowan, said that the original ditch had been 1 1/2 feet deep and that the ditch resulting from McCann's work was about 12 feet deep. In his opinion the "new ditch", with its 1-1 slope, would cause the road to cave off into it within 5 years. He was of the further opinion that in constructing a ditch of that size its banks should not slope more steeply than 4-1. He also considered that McCann's work had created a safety hazard for traffic on the road. McGowan also offered a former field superintendent of Humble Oil and Refining Company. He was allowed to give an opinion *948 that the new ditch, because of depth and slope, would cause the crown of the road and the gravel to wash away. He testified that the new ditch was about 3 feet from the road with a 1-1 slope and said that it should be 50 feet from the road with a 4-1 slope. He also said that the new ditch made the road unsafe.
Another witness for McGowan, who was engaged in the earth moving and road building business, gave it as his opinion that a ditch the size of the new ditch, with a 1-1 slope, would eventually "get the road." The owner of a firm known as Engineer Laboratories, took soil samples of the road and ditch through one of his employees. The witness testified that the material thus obtained was predominantly clay and that clay holds moisture well. But, the witness said, the clay in question was of "high" plasticity. He stated that "high" plasticity clay will erode easier than clay of "low" plasticity. He was allowed to give a "recommendation" that the ditch should be dug with a 4-1 slope.
Complainant-appellant himself testified that, in his opinion, the new ditch would cause the road to "slough off" into the ditch. He said that he would be willing to pay the cost of backfilling that part of the ditch already dug. He admitted that if the road caved it could be repaired but asserted that the cost in time and money would be prohibitive. He also said that the road in question provides the only means of access to the producing wells on the land.
The testimony for McCann was to the effect that there was little difference in depth between the original ditch and the new ditch. A witness who had hunted and fished on the land for some 15 years testified to that effect and that the work being done by McCann was a "clean out of the old ditch necessitated from the flood waters."
Another witness for McCann testified that he also had hunted and fished on the land and had been familiar with the old ditch and had seen the new ditch, and said that the new ditch did not differ significantly from the old ditch. He also testified that the original ditch had had very steep banks similar to those of the new ditch and that he had not observed any "sloughing."
A third witness testified that he too had known the land well since 1946, and was very familiar with the ditch and road in question. He testified that as far as depth was concerned there was little difference between the old ditch and the new ditch.
A professional engineer, testifying as a witness for McCann, said that he had made studies with respect to the present condition of the ditch and road. He said that the new ditch is from 4 to 8 feet deep. Photographs of the ditch and road were introduced. This engineer testified that the ditch is being constructed on a 1-1 slope but that this will not cause an erosion of the road because the land through which it runs is flat and the velocity of water which the ditch carries is low. He said that the ditch is from 3 to 12 feet distant from the road and that this distance is sufficient, the witness saying that many of the roads in the area were also built on a 1-1 slope and were holding well.
McCann himself testified that he had dug and was digging the ditch out to a depth of approximately 8 feet with a 1-1 scope. He said that this would not cause the road to cave in or slough off primarily because most of the surface water would flow into Cypress Bayou rather than into the ditch. He stated that he planned to put in 4 culverts under the road, at his own expense, to help with the drainage. He said that he had already cleared 7,000 acres and had invested 5 and 1/2 million dollars in preparing the land for farming. He said that he was willing to dig the ditch a little further away from the road, beginning, of course, at the point to which he had already constructed it. He testified that to go back and start over with a new ditch further from the road would be very expensive.
At the conclusion of the trial, the chancellor entered a decree dissolving a temporary injunction previously issued, and denied both the prohibitory injunction sought by McGowan to stop the work and the mandatory injunction which would have required McCann to backfill that part of the ditch already dug.
*949 On appeal, McGowan seeks reversal of the chancellor's decree upon the following grounds:
(1) The chancellor manifestly erred in dissolving the temporary injunction and in refusing to issue a permanent prohibitory injunction, the result of which allowed the appellee to continue digging the ditch which will cause irreparable damage to "Oil Well Road."
(2) The chancellor committed reversible error in overruling appellant's motion to vacate the final decree and in denying appellant's petition for a rehearing.
In declining to grant the injunction sought by McGowan the chancellor made the following findings, which he incorporated in the final decree:
The Court finds that there is a reasonable possibility, but not a probability, that the ditch dug and deepened along the south side of the road maintained by Complainant will damage the road, but not a probability that it will cause irreparable damage and the Court is under the opinion that an Injunction against the Defendant should not be continued in effect and made permanent based on a reasonable possibility only.
The Temporary Injunction heretofore issued in this cause is hereby dissolved, and all matters raised in the Bill of Complaint on which it was issued are hereby adjudicated on the merits in favor the Defendant.
In Brooks v. City of Jackson, 211 Miss. 246, 51 So.2d 274 (1951) this Court said:
It is true, of course, that courts of equity do not interfere to accommodate mere apprehensions of injury, and it is only where the injury is substantial and there is reasonable probability that it will occur that the remedy by injunction is available. It is likewise true, however, that the remedy by injunction is preventive in its nature, and that it is not necessary to wait for the actual occurrence of the injury, since, if this were required, the purpose for which the relief is sought would, in most cases, be defeated.
(211 Miss. at 254, 51 So.2d at 277).
See also Erwin v. Mississippi State Highway Commission, 213 Miss. 885, 58 So.2d 52 (Miss. 1952) and 43 C.J.S. Injunctions § 21 (1954).
The following statement appears in 42 Am.Jur.2d Injunctions, section 31 (1968):
Courts cannot determine the rights of parties in advance of an actual existing controversy concerning them, and the power to grant injunctive relief is never exercised to allay mere apprehension of injury, or against something merely feared as liable to occur at some indefinite time in the future. The injury must be real, not imaginary. It must appear to the satisfaction of the court that the apprehension is well grounded, and that there is a reasonable probability that a real injury, for which there is no adequate remedy at law, will occur if the injunction is not granted. Where the danger is apparent and real, as distinguished from an imaginary fear of injury, injunctive relief may be warranted. The court ought not to interfere, however, where the injury apprehended is of a character to justify conflicting opinions as to whether it will in fact ever be realized... .
The testimony before the chancellor was conflicting (1) upon the question of the depth, dimensions and other characteristics of the ditch being dug out by McCann; (2) and as to the effect the digging out of the ditch would or would not have upon the road. These and all factual issues were for determination by the chancellor as trier of facts.
In Laher Spring And Electric Car Corp. v. Breckenridge, 221 So.2d 718 (Miss. 1969), the rule is stated thus:
The findings of facts of the chancellor where the testimony is in conflict will not be disturbed on appeal unless manifestly wrong.
(221 So.2d at 721).
*950 And in Allen v. Thompson, 248 Miss. 544, 158 So.2d 503 (1963), this Court said:
It is the uniform rule that the chancellor's finding on the facts is reviewable on appeal only when manifestly wrong, and when two or more reasonable inferences are deducible from the facts, the inference drawn and adopted by the chancellor will control on appeal. This rule has its foundation not only in the imperative operation of the constitutional ordinances mentioned; it has a further control and reason in this: the opportunities afforded to the trial court are far better for arriving at correct conclusions and findings from all of the questions of fact. Of this matter our Supreme Court has said: "`Here we have nothing but the naked record before us; there, in most cases, the parties themselves are in the presence of the court and testifying. The manner of testifying, and their appearance upon the witness stand, and many other things, are influential in determining the triers of fact;' or as said in another case: The decision of the chancellor where the evidence is conflicting will not be disturbed on appeal, since he is better able to determine the truth of the matter than the appellate court. And, this rule still holds true, although incompetent evidence has been admitted, if nevertheless there is enough competent evidence to sustain the decree." Griffith, Miss. Chancery Practice, 2nd ed. 1950, § 674.
(248 Miss. at 556-557, 158 So.2d at 508).
See also McNair v. Capital Electric Power Association, 324 So.2d 234 (Miss. 1975); Boatright v. Horton, 233 Miss. 444, 102 So.2d 373 (1958); Jones v. Jones, 227 Miss. 1, 85 So.2d 580 (1956).
We are unable to say that the chancellor was manifestly wrong in finding from the evidence which he had before him that, while there was a possibility that injury might result to the road from McCann's work on the ditch, there was no reasonable probability that such damage would occur. The decree appealed from, therefore, must be affirmed.
We have also concluded that the contention of appellant that the chancellor erred in denying his motion to vacate the final decree and to grant a rehearing is without merit. The final decree in the case was entered October 29, 1976, and filed for record November 1, 1976. On November 8, 1976 appellant's petition for an appeal to this Court was granted and an order entered granting the appeal, setting the amount of bond, and a notice to the court reporter to transcribe his notes was filed. On November 9, 1976, the appeal bond was filed by appellant and approved and thereupon the chancery court lost jurisdiction of the case, jurisdiction having become vested in this Court. See Dunavant Enterprises, Incorporated v. Ford, 294 So.2d 788 (Miss. 1974).
Appellee's motion to dismiss the appeal as moot is likewise without merit and is denied.
Finally, this Court cannot consider matters not properly a part of the record. Certain remarks attributed to the chancellor and not made a part of the record come within that category. This fact is not altered by their inclusion in appellant's petition for rehearing filed in the chancery court after the case had been removed to this Court on appeal.
AFFIRMED.
PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.