880 So.2d 362 (2004)
Herman E. HEIDKAMPER, Appellant
v.
W.W. ODOM, DeAnna Odom and Charlotte LeBlanc, Appellees.
No. 2003-CA-00882-COA.
Court of Appeals of Mississippi.
August 17, 2004.
*363 Lee B. Agnew, Kate S. Eidt, Jackson, attorneys for appellant.
W.W. Odom, DeAnna Odom and Charlotte LeBlanc, appellees, pro se.
EN BANC.
KING, C.J., for the Court.
¶ 1. Charlotte LeBlanc, W.W. Odom and DeAnna Odom sought an injunction to enjoin Herman Heidkamper from further flooding their land with overflow from his pond. The Chancery Court of Hinds County enjoined Heidkamper from further damaging the Odoms' property, and ordered him to install additional drainage pipes, make repairs, and pay damages to LeBlanc in the amount of $4,000, and $2,000 jointly to the Odoms and LeBlanc for attorney's fees. Aggrieved by this decision, Heidkamper appeals, and asserts the following quoted issues:
I. The Chancellor erred in his issuance of injunctive relief by failing to counterbalance his broad discretion with his duty to apply great caution, care and deliberation.
II. The Chancellor erred in his issuance of injunctive relief in so far as the record contained conflicting testimony pertaining to the character and effects of the Appellant's pond.
III. The Chancellor's issuance of injunctive relief at the trial level was improper due to the absence of imminent, irreparable harm.
IV. The Chancellor erred by issuing a mandatory injunction without the evidence reaching the required burden of proof.
*364 V. The Chancellor's failure to balance the equities between the parties resulted in an unfounded depravation of the use and enjoyment of Appellant's pond.
Finding no error, we affirm.

STATEMENT OF FACTS
¶ 2. W.W. and DeAnna Odom have lived for twenty-one years on a two-plus acre lot in Raymond where they maintain dairy cows. LeBlanc has lived on a similar sized lot, to the north of the Odoms, for about eight years. Herman Heidkamper purchased the lot situated between the Odom and LeBlanc properties. Sometime in the year 2001, Heidkamper built a 0.3 acre pond on his property. LeBlanc and the Odoms had no problem with the pond until Heidkamper built a dam on the side of the pond adjacent to the Odom property. Subsequently, moderate amounts of rain began to cause the pond to overflow onto the property of the Odoms, and caused water to back up on LeBlanc's property. In an attempt to correct the overflow problem, Heidkamper installed a drainage pipe from the pond to the front of his property, and also built a retaining wall toward the road from the pond on the Odom/Heidkamper property line.
¶ 3. On November 14, 2001, Charlotte LeBlanc and the Odoms filed a complaint in the Chancery Court of Hinds County for injunctive relief and damages, alleging that their properties were damaged from the overflow of Heidkamper's pond.
¶ 4. The Odoms alleged that water overflowed and flooded the small barn used for sheltering their dairy cows, and damaged their fence by washing out its stable foundation. The Odoms also alleged that the retaining wall Heidkamper built encroached two inches onto their property.
¶ 5. LeBlanc alleged that the back-up of water onto her property washed out cavities in the landscape, and rendered a portion of her pasture a useless bog. She also claimed that Heidkamper damaged her fence with his vehicle, killed vines which she had cultivated along their common property line, and that the flooding ruined a sump pump of hers which had to be reinstalled in concrete.
¶ 6. In his answer, Heidkamper alleged that the saturated condition of the Odom and LeBlanc properties was due to the natural topography of the land, as it existed prior to the construction of his pond.
¶ 7. On September 17, 2002, a hearing was held. On November 18, 2002, the chancellor issued a ruling, which (1) permanently enjoined Heidkamper from further flooding the Odom and LeBlanc properties and from intentionally destroying any plants belonging to LeBlanc, (2) ordered him to lower the level of his pond by two feet, (3) to install two additional drain pipes, and (4) to repair the fences of both the Odoms and LeBlanc. The chancellor also ordered Heidkamper to pay $4,000 in damages to LeBlanc for the purposes of repairing the cavities on her property caused by the backup of water from the overflow of Heidkamper's pond, and to pay $2,000 jointly to the Odoms and LeBlanc for attorney's fees. The chancellor held that the muddy floor in the Odoms' shed was not caused by Heidkamper's pond, and found it unreasonable to require Heidkamper to remove the retaining wall for no more than a two inch encroachment onto the Odom property.

ISSUES AND ANALYSIS

I.

The Chancellor erred in his issuance of injunctive relief.
¶ 8. "When reviewing decisions rendered by our chancery courts we must remember *365 that our "[c]hancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court's actions were manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard." Lupo v. State Dept. of Transp., 771 So.2d 358, 360-61(¶ 8) (Miss.2000) (citations omitted).
¶ 9. Heidkamper contends that the chancellor erred in granting injunctive relief due to conflicting testimony, the absence of imminent, irreparable harm, and the lack of necessary proof to meet the burden required to issue a mandatory injunction. Heidkamper also argues that the issuance of an injunction resulted in unfounded depravation of the use and enjoyment of his pond, and that the chancellor failed to counterbalance his broad discretion with his duty to apply great care, caution, and deliberation.
¶ 10. The testimony of Deanna Odom, and LeBlanc sharply conflicted with the testimony of Heidkamper's expert witness, Ross Ulmer of the USDA Soil and Conservation Service. Ulmer testified that all three tracts of land had a long history of wetland saturation, that Heidkamper's pond actually benefitted the adjacent tracts because it served as a depository for the upstream flow of water, and the existing moisture in the land was the result of the natural slope combined with a soil type that allows for little moisture absorption. LeBlanc and Deanna testified that the land was not saturated with moisture until Heidkamper built his pond, and damages from the overflow were not the result of natural conditions of the land and soil. The Odoms and LeBlanc presented no expert testimony. Although this testimony is sharply contradictory, the chancellor is afforded broad discretion when deciding which testimony to believe. In Carter v. Carter, this Court held:
The resolution of disputed questions of fact is a matter entrusted to the sound discretion of the chancellor. On appeal, we are limited to searching for an abuse of that discretion; otherwise, our duty is to affirm the chancellor. Our job is not to reweigh the evidence to see if, confronted with the same conflicting evidence, we might decide the case differently. Rather, if we determine that there is substantial evidence in the record to support the findings of the chancellor, we ought properly to affirm. The chancellor, by his presence in the courtroom, is best equipped to listen to the witnesses, observe their demeanor, and determine the credibility of the witnesses and what weight ought to be ascribed to the evidence given by those witnesses. It is necessarily the case that, when conflicting testimony on the same issue is presented, the chancellor sitting as trier of fact must determine which version he finds more credible.
As to matters of law, however, a different standard applies. In that case, our review is de novo, and if we determine that the chancellor applied an incorrect legal standard, we must reverse.
Carter v. Carter, 735 So.2d 1109, 1114 (¶¶ 18-20) (Miss.Ct.App.1999) (citations omitted). The chancellor found the testimony of Deanna and LeBlanc the most credible, and based his decision on that testimony. When there is substantial evidence to support the chancellor's decision, as in the case sub judice, we are powerless to overturn it, and that decision must stand.
¶ 11. The party requesting an injunction must show a threat of imminent harm, rather than mere fear or apprehension alone. "To obtain a permanent injunction, a party must show an imminent threat of irreparable harm for which there is no adequate remedy at law." Punzo v. *366 Jackson County, 861 So.2d 340, 347 (¶ 26) (Miss.2003). "It is likewise true, however, that the remedy by injunction is preventive in its nature, and that it is not necessary to wait for the actual occurrence of the injury, since, if this were required, the purpose for which the relief is sought would, in most cases, be defeated." McGowan v. McCann, 357 So.2d 946, 949 (Miss.1978).
¶ 12. Heidkamper argues there is no evidence to support an injunction as there is an absence of imminent, irreparable harm to the adjacent property owners. Heidkamper contends he has already taken remedial measures with the installation of the drainage pipe, and since its installation the Odoms and LeBlanc have not experienced any flooding on their properties. He notes that the Odoms and LeBlanc have admitted that their land is currently dry, but that they feared an overflow in the future.
¶ 13. Heidkamper's expert witness, Ulmer, testified that it would take a ten, twenty-five, or fifty year rain to produce enough rainfall for the pond to overflow again. These are storms that statistically, rather than chronologically, occur every ten, twenty-five, and fifty years, and are so delineated by the amount of rainfall. Ulmer stated, that while it is statistically unlikely, that there is no way to predict when these rains will actually occur, and that is it possible to have closely recurring twenty-five and fifty year storms.
¶ 14. As previously mentioned, it is not necessary to wait for the actual occurrence of the injury as an injunction is preventative in nature. See McGowan, at 949. It was not an abuse of discretion for the chancellor to find an injunction necessary based on the likelihood that the pond, in its present condition, would overflow causing further damage to the adjacent properties.
¶ 15. Even though the language of the order appears prohibitory, Heidkamper argues that the chancellor issued a mandatory injunction, and that the evidence presented failed to meet the required burden of proof for a mandatory injunction. Heidkamper contends that the chancellor's order requiring him to add extra drainage pipes and lower the level of his pond by two feet created a mandatory injunction to be completed under the guise of a prohibitory injunction. A prohibitory injunction simply prohibits certain conduct, while a mandatory injunction requires an affirmative act or course of conduct. "Mandatory injunctions will never be granted unless extreme or very serious damage at least will ensue from withholding that relief; nor will they be issued in doubtful cases." Mississippi State Highway Comm'n v. Spencer, 233 Miss. 155, 101 So.2d 499, 506 (Miss.1958).
¶ 16. Heidkamper refers us to Warrior, Inc. v. Easterly, 360 So.2d 700 (Miss.1978), to argue that the necessary proof was not presented to issue a mandatory injunction. The Warrior case held that the burden of proof for a mandatory injunction must be beyond a reasonable doubt. However, a case handed down last year by the supreme court on the subject of mandatory injunctions overruled the requirement of Warrior that mandatory injunctions be proven beyond a reasonable doubt, and stated:
In Reynolds v. Amerada Hess Corp., 778 So.2d 759, 765 (Miss.2000), we stated, "To obtain a permanent injunction, a party must show an imminent threat of irreparable harm for which there is no adequate remedy at law." In Reynolds, this Court made no mention of a requirement of proof beyond a reasonable doubt, which the trial court stated is the proof required.
¶ 27. In Hall v. Wood, 443 So.2d 834, 841 (Miss.1983), though this Court suggested *367 use of extreme caution in granting a mandatory injunction, we did not require a showing of proof beyond a reasonable doubt. We stated, "A mandatory injunction should be ordered where such is the only `effective remedy.'" For further clarification, we explained,
Mandatory injunctions should be granted only where that which they demand is reasonably practicable. A mandatory injunction requiring a "practical impossibility" should never issue. Homes, Inc. v. Anderson, 235 So.2d 680, 683 (Miss. 1970). The expense and hardship to the party enjoined should also be considered. That these may be substantial counsels caution and restraint. This decision does require that the remedy be practicable.
¶ 28. In Pattillo v. Bridges, 247 So.2d 811 (Miss.1971), this Court did cite Thomas [v. Mississippi Power & Light Co., 170 Miss. 811, 152 So.2d 269 (1934),] but not to the requirement of proof beyond a reasonable doubt....
Punzo v. Jackson County, 861 So.2d 340, 347-48 (Miss.2003) (citations omitted). The burden of proof for a mandatory injunction is as stated in Reynolds, "requiring the requesting party to show an imminent threat of irreparable harm for which there is no adequate remedy at law, and in keeping with Homes, Inc., a mandatory injunction should be granted only if reasonably practicable." Punzo, 861 So.2d at 348 (¶ 29). Punzo requires that a mandatory injunction be issued when there is an imminent threat of irreparable harm for which there is no adequate remedy, and although mandatory injunctions must be reasonably practicable, they need not be proven beyond a reasonable doubt.
¶ 17. The chancellor in this case, not only prohibited certain conduct, but required affirmative acts to remedy the damage from the prohibited act, and as such he did in fact issue a prohibitory as well as a mandatory injunction. See generally Hall v. Wood, 443 So.2d 834, 841 (Miss. 1983). In his order the chancellor issued a prohibitory injunction when he stated, "the defendant, Herman Heidkamper, be and he is hereby permanently enjoined from flooding the W.W. Odom, Deanna Odom, and Charlotte LeBlanc property." However, the chancellor went on to order Heidkamper to lower the level of his pond by two feet, install additional drainage pipes, and to repair the fences of both adjacent property owners. These actions are affirmative acts thereby creating a mandatory injunction.
¶ 18. We now turn to the evidence presented to determine whether a mandatory injunction was warranted. As noted, a mandatory injunction requires that the party seeking the injunction must first show "an imminent threat of irreparable harm for which there is no adequate remedy at law." Punzo, 861 So.2d at 347. Ulmer's testimony indicates that there is a threat of imminent harm to the Odom and LeBlanc properties, since he admitted that heavy rains could cause the dam to overflow. The harm resultant in the overflow of the pond, was property damage to the adjacent property owners from standing water on LeBlanc's property and overflow onto the Odoms' property. In his order, the chancellor held that there was no other remedy available at law to the Odoms and LeBlanc. He stated "[t]he Court was, however, convinced that Herman would not have taken any significant measures, if any at all, given the attitude he was said to have had in response to the plaintiff's attempts at simple neighborly communication to correct the problem the overflow from his pond was causing Charlotte and the Odoms."
¶ 19. The Punzo case requires that a mandatory injunction be granted only if *368 reasonably practicable. Heidkamper contends that the injunction was impracticable. He argues that since his pond is shallow lowering it two feet would make it too shallow to hold fish, and render it virtually useless for any purpose. Heidkamper also contends that the injunction is impracticable in requiring him to install two additional six inch drain pipes, as he has already installed two overflow pipes, and since their installation Deanna Odom and LeBlanc testified that their land has remained dry. Although, bothersome as it may be, the chancellor's decision to require Heidkamper to install additional drainage pipes, and lower his pond by two feet, is not an unreasonably impracticable requirement to alleviate future flooding of Heidkamper's pond.
¶ 20. Finally, Heidkamper alleges that the chancellor failed to apply great caution, care and deliberation when issuing the injunction. We are not of the opinion that the chancellor abused his discretion in issuing this injunction, and we find his findings of fact and conclusions of law sufficient to support the granting of an injunction.
¶ 21. We cannot say that the chancellor did not make a correct disposition of the issues presented. We find no abuse of discretion, and therefore allow the injunction to stand.
¶ 22. THE JUDGMENT OF THE CHANCERY COURT OF HINDS COUNTY IS HEREBY AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
BRIDGES, P.J., LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. IRVING AND BARNES, JJ., NOT PARTICIPATING.