# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01648-COA

**MICHAEL B. GAFFNEY**                                                    **APPELLANT**

v.

**CITY OF RICHLAND, MISSISSIPPI**                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 10/21/2014 |
| TRIAL JUDGE: | HON. DAN H. FAIRLY |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | LINDSEY MCGEE TURK |
| ATTORNEYS FOR APPELLEE: | JOSHUA J. WIENER |
| | DONNA BROWN JACOBS |
| | KATIE B. SNELL |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| TRIAL COURT DISPOSITION: | FOUND APPELLANT IN CONTEMPT FOR FAILURE TO COMPLETE CONSTRUCTION OF DWELLING IN ACCORDANCE WITH APPLICABLE BUILDING CODES BY SEPTEMBER 5, 2014; AWARDED APPELLEE $8,232.82 IN FEES AND EXPENSES; AUTHORIZED APPELLEE TO DEMOLISH THE UNCOMPLETED DWELLING; AND AWARDED APPELLEE A LIEN ON PROPERTY FOR COSTS OF DEMOLISHING DWELLING |
| DISPOSITION: | REVERSED AND REMANDED FOR ENTRY OF AN ORDER OF DISMISSAL - 10/04/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., BARNES AND ISHEE, JJ.**

**LEE, C.J., FOR THE COURT:**

## FACTS AND PROCEDURAL HISTORY

**I.      2002 to 2012**

¶1. On February 27, 2002, the City of Richland issued a building permit to Michael Gaffney to start building a house at 126 Hemlock Drive in Richland, Mississippi. The permit indicated that it would become void if work or construction did not commence within six months of the date of issuance, or if work was suspended or abandoned for a period of six months at any time after work started. After obtaining the permit, Gaffney began construction.

¶2. In a letter dated April 16, 2007—over five years after the issuance of the permit—Gaffney was notified that the building permit was void and was ordered to stop work. Jeff Sims, the building official for the City, testified that he typically received a request for an inspection prior to a builder moving on to the next phase of construction. According to Sims, he had not received such a request from Gaffney in three years. Subsequently, Gaffney applied for a second set of permits, which were issued with the same six-month provisions.

¶3. In a letter dated May 5, 2012—over ten years after the issuance of the original building permit—the City notified Gaffney that the second set of permits was void. According to Sims, Gaffney had suspended or abandoned construction again. Aggrieved, Gaffney asked to be heard by the Board of Aldermen.

**II.     Complaint**

¶4. In the meantime, in November 2012, the City filed a complaint against Gaffney in the Chancery Court of Rankin County, claiming:

(1)     Gaffney repeatedly failed to complete construction;

(2)     Gaffney failed to maintain the property;

(3)     The property constituted a danger and/or nuisance under Mississippi Code Annotated section 21-19-11 (Rev. 2015); and

(4)     Gaffney breached the terms of the building permits as well as his representations and covenants to the City.

¶5.    The City requested the following relief:

(1)     Enjoin Gaffney to complete construction within a period of time determined by the chancery court;

(2)     In the event Gaffney failed to complete construction, authorization of demolition and removal;

(3)     Reasonable attorney's fees and costs; and

(4)     Other relief to which the City may be entitled.

### III.    2012 to 2014

¶6.    Notwithstanding the filing of the complaint, on December 18, 2012, the Board passed a resolution allowing Gaffney to obtain new permits and complete construction by April 2, 2013. However, according to the City, Gaffney did not complete construction.

¶7.    On April 16, 2013, the Board passed another resolution allowing Gaffney an additional sixty days to complete construction. Gaffney was issued new permits, which stated: "Per Resolution of [the] Board . . . [April 16, 2013], all construction to be completed no later than [June 16, 2013] in accordance with applicable codes . . . . No further permits shall be issued." According to the City, Gaffney did not complete construction again. As a result, in September 2013, the City filed an amended complaint in the chancery court.

### IV.    August 19, 2014 Hearing

3

¶8.    Because Gaffney was a pro se litigant, the chancellor granted Gaffney a standing objection to all matters at the August 19, 2014 hearing.

### A.    Testimony

¶9.    An inspection of Gaffney's house took place a few days before the hearing. Sims testified that electrical extension cords and water hoses were being run from the neighboring house to Gaffney's house. Sims also noted the following issues with Gaffney's house: electrical issues; the ditch alongside the house was eroding into the foundation and in need of a retaining wall; an air-conditioning unit blocked egress through a window; the concrete slab lacked flooring; the door landing lacked a staircase; a leak over the dishwasher in the kitchen; broken glass on the floor; clothing in a closet and a bed leaning up against a wall, indicating Gaffney was occupying the house; and an RV outside.

¶10.    Gaffney testified that the concrete slab would be stained; the leak over the dishwasher was from a small refrigerator sitting on the counter; and the glass on the floor was safety glass. Gaffney also testified that he had never occupied the house.

### B.    Ruling[1]

¶11.    The chancery court ordered Gaffney to complete construction no later than 5:00 p.m. on September 5, 2014. Gaffney was ordered to immediately disconnect and remove electrical extension cords and water hoses running from the neighboring property, make arrangements for a temporary power pole, and refrain from occupying the house. The chancery court also indicated that it would award attorney's fees, provided the City submitted claims for such.

---

[1] An order incorporating the chancellor's bench ruling was entered on August 28, 2014.

Finally, Gaffney was advised

> of the potential remedies and relief which the [chancery court] may impose should [Gaffney] fail to comply with the [chancery court's] orders herein, including but not limited to granting the City the right to commence demolition . . . and/or such other remedies and relief which the [chancery court] may find in order.

### V.    October 8, 2014 Hearing

¶12.    In September 2014, the City filed a motion to hold Gaffney in contempt for failing to comply with the chancery court order.  The City also filed a motion for attorney's fees and costs.

¶13.    In early October 2014, Gaffney filed a motion to continue the hearing.  Gaffney also filed a motion to dismiss and strike the City's motion to hold him in contempt.  The chancery court denied Gaffney's motion to continue, and a hearing was held on October 8, 2014.

¶14.    Donald Jones, the building inspector for the City, testified that an inspection was conducted at 5:00 p.m. on September 5, 2014.  Jones testified that although there had been some improvements to the house, construction was not complete.  Jones stated that Gaffney removed the extension cords and water hoses and, to his knowledge, Gaffney had not occupied the house.  But, according to Jones, a final inspection could not take place because no temporary power pole had been erected and there were no utilities.  Jones also testified that there was still no retaining wall.

¶15.    When the chancery court asked Gaffney if he had finished construction, Gaffney responded, "Yes, I think I have." According to Gaffney, he tried to obtain a temporary power pole, but Entergy did not provide the power pole until a week after the September 5

5

inspection. And Gaffney testified that utilities were not hooked up because he had to go through the City to get them turned on.

¶16. At this point, the hearing was recessed, and another inspection took place. Sims returned from the inspection and testified that there were no utilities; there was no retaining wall; there were receptacles without covers, a breaker was missing for the air-conditioning unit; there was improper access to HVAC unit; the water-heater drain was installed improperly; there were no fixtures in a bathroom; and there were personal belongings inside the house. Sims stated: "We would not let anybody move in that house with the electrical issue as it is . . . . The retaining wall is a big issue." When asked if the house was "anywhere close to being ready for occupancy," Sims stated, "I can say it's close, but it's not there."

¶17. Gaffney testified that there was "not that much left to do." He testified that there were only minor issues inside of the house, and the outside of the house was complete but for the retaining wall and the main sewer line.

¶18. Ultimately, the chancery court found Gaffney in contempt for failing to complete construction by September 5, 2014, and authorized demolition of the house.[2] The chancery court also awarded the City $8,232.82 in attorney's fees.

**VI.  Appeal**

¶19. Gaffney appeals, asserting: (1) the house does not rise to the level of a menace to the public health, safety, and welfare of the community as contemplated by section 21-19-11; (2)

---

[2] Demolition was to occur no earlier than thirty days from the date of the final judgment in order to allow Gaffney the opportunity to file a notice of appeal to seek a stay of the final judgment.

he was denied a fair trial as a result of the chancellor's conduct throughout the proceedings; and (3) the chancery court erred in awarding attorney's fees to the City.

## DISCUSSION

¶20. Section 21-19-11(1) provides in part:

> To determine whether property or parcel of land located within a municipality is in such a state of uncleanliness as to be a menace to the public health, safety[,] and welfare of the community, **a governing authority of any municipality shall conduct a hearing**, on its own motion, or upon the receipt of a petition signed by a majority of the residents residing within four hundred (400) feet of any property or parcel of land alleged to be in need of the cleaning.
>
> . . . .
>
> **If, at such hearing, the governing authority shall adjudicate** the property or parcel of land in its then condition to be a menace to the public health, safety[,] and welfare of the community, the governing authority, if the owner does not do so himself, shall proceed to clean the land, by the use of municipal employees or by contract, by cutting grass and weeds; filling cisterns; removing rubbish, abandoned or dilapidated fences, outside toilets, abandoned or dilapidated buildings, slabs, personal property, which removal of personal property shall not be subject to the provisions of Section 21-39-21, and other debris; and draining cesspools and standing water therefrom.

(Emphasis added).

¶21. Mississippi Code Annotated section 11-51-75 (Rev. 2012) sets forth the procedure for appeals from judgment or decision by municipal authorities. "[Section 11-51-75] states that the person aggrieved may 'embody the facts, judgment and decision in a bill of exceptions' which will be transmitted to the circuit court acting as an appellate court.'" *Van Meter v. City of Greenwood*, 724 So. 2d 925, 928 (¶7) (Miss. Ct. App. 1998).

¶22. Because the "governing municipal authority" (i.e., the Board) was the appropriate

7

entity to conduct a hearing, with any appeal being to the circuit court, the chancery court lacked jurisdiction over any claim brought under section 21-19-11. *See Pierce v. Pierce*, 132 So. 3d 553, 560 (¶14) (Miss. 2014) ("the issue of subject-matter jurisdiction may be raised at any time in the proceedings, including on appeal.").

¶23. Although the chancery court's jurisdiction encompasses relief sought through injunction, issuance of an injunction is an extraordinary relief requiring first a showing of "imminent threat of irreparable harm for which there is no adequate remedy at law." *Heidkamper v. Odom*, 880 So. 2d 362, 365 (¶11) (Miss. Ct. App. 2004). When a statutory scheme exists concerning review of an agency or board's decision, an adequate remedy at law exists, precluding the issuance of injunctive relief. *A-1 Pallet Co. v. City of Jackson*, 40 So. 3d 563, 569 (¶22) (Miss. 2010).

¶24. The City asks this Court to find, separate and apart from section 21-19-11, that a municipality has the authority to impose deadlines for completing construction of a dwelling. Keeping in mind the relief requested by the City and granted by the chancery court, the City is also asking this Court to find that noncompliance with any such deadlines authorizes the municipality to demolish the dwelling.

¶25. The City cites to several Mississippi cases for support; however, these cases were brought pursuant to section 21-19-11 or the equivalent thereof. *See Bond v. City of Moss Point*, 240 So. 2d 270, 270-71 (Miss. 1970) (a local ordinance authorized demolition and removal of dwellings constituting a public nuisance); *Bray v. City of Meridian*, 723 So. 2d 1200, 1202-03 (¶17) (Miss. Ct. App. 1998); *Pearson v. City of Louisville*, 2008 WL 4814051

(N.D. Miss. Nov. 4, 2008).

¶26.    The City also cites to several unpublished opinions from other jurisdictions; however, the claims in these cases were brought pursuant to statute, local ordinance, or a homeowners association's covenants, conditions, and restrictions (CC&R). *See City of Westfield v. Saia*, 2009 WL 275768 (Mass. Ct. App. Feb. 6, 2009) (a local ordinance imposed a five-year deadline for the completion of a condominium project); *Ray v. Bd. of Union Twp. Trs.*, 2007 WL 1731434 (Oh. Ct. App. Jun. 18, 2007) (statute and zoning resolutions authorized removal of uncompleted residences); *Nellie Gail Ranch Owners Ass'n v. Colombo,* 2013 WL 6243510 (Cal. Ct. App. Dec. 3, 2013) (a homeowners association's CC&R required completion of a residence within one year); *Urbanski v. City of St. Paul,* 2011 WL 1938189 (Minn. Ct. App. May 23, 2011) (statute and local ordinance authorized nuisance-abatement actions).  In the instant case, the City does not cite to any such statute, ordinance, or homeowners association's CC&R.

¶27.    Accordingly, we reverse the chancellor's judgment and remand this case for the entry of an order of dismissal for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.

¶28.    **THE JUDGMENT OF THE CHANCERY COURT OF RANKIN COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR ENTRY OF AN ORDER OF DISMISSAL.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**BARNES, ISHEE, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR. IRVING, P.J., AND CARLTON, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.  GRIFFIS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**