# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01309-COA

**DONALD E. BOOKER AND NERISSA BOOKER**                    **APPELLANTS**

**v.**

**C.V. GLENNIS AND LIVIA SUE GLENNIS**                          **APPELLEES**

DATE OF JUDGMENT:                    07/05/2016
TRIAL JUDGE:                         HON. DEBBRA K. HALFORD
COURT FROM WHICH APPEALED:           PIKE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS:             D. SCOTT GIBSON
ATTORNEY FOR APPELLEES:              RONALD L. WHITTINGTON
NATURE OF THE CASE:                  CIVIL - REAL PROPERTY
DISPOSITION:                         AFFIRMED: 10/30/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., GREENLEE AND TINDELL, JJ.

### TINDELL, J., FOR THE COURT:

¶1.     This is an appeal from the Pike County Chancery Court's award of damages stemming from an ongoing property dispute between neighbors. In 2009, C.V. and Livia Sue Glennis brought suit against their neighbors, Donald and Nerissa Booker, who then filed a counter-claim. The chancery court entered its original judgment in 2010. Two years later the Glennises filed a petition for contempt. After a bench trial in 2016, the chancellor entered a judgment that, among other things, awarded $1,320 in damages to the Glennises. The award of damages is the sole issue the Bookers raised on appeal. After our review, we affirm the chancery court's award of damages.

### DISCUSSION

¶2.     The Bookers and the Glennises own partially adjacent parcels in Pike County, Mississippi. The Bookers came into ownership of their property by warranty deed in 1987. The Glennises purchased their separate property in 1993. In ongoing negotiations over the years, certain easements and other unwritten agreements were discussed between the parties. These discussions centered on allowing what the parties felt was a more suitable driveway to and from their homes to nearby access roads, as well as the Bookers' access to the view of a local lake. The parties also verbally agreed on other matters, such as the placement of utility lines servicing each of their properties.

¶3.     In 2009, the Glennises filed their complaint seeking enforcement of various oral agreements, a constructive trust, and title to disputed property. Thereafter, the Glennises moved for a temporary restraining order and preliminary injunction alleging, among other things: threats, harassment, misuse of easements, and property damage. The Bookers responded with trespassing and property damage claims of their own.

¶4.     After a trial, the chancellor entered a May 2010 judgment confirming certain easements and access areas to the Bookers and the Glennises, finding no proof of damages on either side of the dispute, and forbidding the parties to come onto or use the land of the other.

¶5.     In 2012, the Glennises filed a petition for citation of contempt regarding the Bookers' violations of certain provisions of the May 2010 order. The Bookers filed an answer and counter-claim to this petition denying violation of the prior judgment and, in return, alleging the Glennises caused continuing property damage and annoyances. Prior to a hearing on the

contempt petition, the Glennises requested emergency relief.

¶6.     For reasons not pertinent to the determination of this appeal, the case was continued and delayed on various occasions until the trial on May 31, 2016. At trial, the chancellor ordered the pleadings "amended to conform to the evidence presented at the conclusion of trial due to multiple issues tried that were not pleaded." As reflected in the record, counsel for both parties requested and consented to this amendment of the pleadings.

¶7.     After the second trial, the chancellor entered a July 5, 2016 judgment: defining certain driveways and utility easements; delineating cost allocation for elective improvements and access areas to the Bookers and the Glennises; extinguishing an easement running in close proximity to the Bookers' home; finding insufficient proof to find any party in criminal or civil contempt of the court's prior orders; forbidding the parties from coming onto, or interfering with, or damaging the land owned by the other; forbidding the parties from coming onto, or interfering with, or damaging the delineated easements held by the other; and granting an award of $1,320 to the Glennises against the Bookers for the destruction of certain shrubs (twenty-nine Elaeagnus bushes).[1] The sole issue raised by the Bookers' appeal is the damage award of $1,320. The Glennises filed no response on appeal.[2]

## STANDARD OF REVIEW

¶8.     We "will not disturb the factual findings of a chancellor when supported by substantial

---

[1] The Glennises planted the bushes along the Glennises' property line and obscured the Bookers' view of the Glennises' lake.

[2] Although the Glennises filed a motion for permission to file an untimely response, that request was denied by order of this Court.

evidence unless we can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard." *Lane v. Lampkin*, 175 So. 3d 1222, 1227 (¶6) (Miss. 2015) (internal quotation mark omitted) (quoting *Biglane v. Under the Hill Corp*., 949 So. 2d 9, 13-14 (¶17) (Miss. 2007)). The Mississippi Supreme Court has held that "damage awards are only overturned when the trial judge has abused his discretion or in exceptional cases where such awards are so gross as to be contrary to right reason." *Id.* at 1227 (¶7) (internal quotation marks omitted).

## ANALYSIS

¶9.     Three issues arise from the Bookers' appeal: (1) whether the failure of the appellees, the Glennises, to respond to the appeal has any effect on our review; (2) whether the claim for damages for the death of the shrubs was properly before the court and tried by consent; and (3) whether there was sufficient evidence to support the findings of the chancellor's damage award.

### I.     Appellees' Failure to File a Response Brief

¶10.     We are presented with two options when the appellee has not filed a brief. The first "is to take the appellee['s] failure to file a brief as a confession of error and reverse." *Miller v. Pannell*, 815 So. 2d 1117, 1119 (¶7) (Miss. 2002). The second is to disregard the appellee's failure to file a brief and affirm. *Id*.

¶11.     We should take the failure to file a brief as a confession of error only when: (1) the record is complicated or voluminous; and (2) the appellant has presented an apparent case of error. *Id*. Here, the record is neither complicated nor voluminous, and this is not an

4

apparent case of error. In fact, as will be discussed herein, the record shows "a sound basis upon which the judgment may be safely affirmed." *Id*. at 1119 (¶8) (internal quotation mark omitted). Therefore, we disregard the appellee's failure to file a brief, because there is "a sound and unmistakable basis upon which the judgment may be safely affirmed." *McGrew v. McGrew*, 184 So. 3d 302, 306 (¶10) (Miss. Ct. App. 2015) (internal quotation mark omitted) (quoting *Miller*, 815 So. 2d at 1119 (¶¶7-8)).

## II. Issue of Damage Tried by Consent

¶12. The Bookers argue that the destruction of the shrubs was not an issue properly before the court and therefore was improperly determined. The Bookers assert that they never consented to trying the claim for damages for the death of the shrubs. The record, however, reveals otherwise. At trial, upon request by the Bookers' counsel, the chancellor allowed testimony beyond that of the Glennises' contempt pleadings and treated all pleadings as amended to conform to the evidence tried and "to include the granting of any affirmative relief regarding the two parties . . . so as to minimize the future conflicts between them." Later in trial, Bookers' counsel again asked to go further into issues with his examination of Mr. Booker, and the chancellor allowed the expansion because "those issues are before the Court in the complaint and counter-complaint, requesting for affirmative relief filed pro se by the Bookers . . . ."

¶13. Both the Glennises' counsel and the Bookers' counsel elicited, on a number of occasions, witness testimony regarding the destruction of the shrubs. Further, during the cross-examination of Mr. Glennis, the chancellor indicated her understanding that "from

5

listening to the testimony and looking at the photograph the shrubs that have been testified [about], [which] were not raised in the pleadings but have been testified [about,] [are being] tried by the consent of the parties . . . ." No party objected to this issue being tried. In fact, at the end of the trial, the Glennises' counsel moved for their pleadings to be conformed to the proof submitted, and the Bookers' counsel asserted, "[w]e would make the same motion, Your Honor." Thereafter, in the subject order of July 5, 2016, the chancellor ordered "all of said pleadings . . . [be treated as] amended to conform to the evidence presented at the conclusion of trial due to multiple issues tried that were not pleaded."

¶14. Mississippi Rule of Civil Procedure 15(b) permits issues to be tried by express consent of the parties.

> When issues not raised by the pleadings are tried by expressed or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure to so amend does not affect the result of the trial of these issues.

M.R.C.P. 15(b); *Weiss v. Weiss*, 579 So. 2d 539, 542 (Miss. 1991). As reflected in the record, counsel for both parties put on evidence regarding the shrub destruction, and counsel for both requested and consented to this amendment of the pleadings. Therefore this issue is without merit.

### III.    Sufficient Evidence to Support the Damage Award

¶15. The chancellor's damage award due to the shrub destruction covers over twelve detailed paragraphs and over two pages of the 2016 order. Further, the chancellor, as requested in a motion filed by the Bookers, viewed the parties' properties in person. She was

fully informed, not just by photographs, but by visual inspection of the layout and condition of the parties' property.

¶16. The parties' testimonies presented to the chancellor were conflicting. The Glennises planted the shrubs along the right-of-way as an improvement to cover up the bare steel pipe and wire fence that marked the parties' property line with shrubbery. The Bookers claimed in their answer that the Glennises planted the shrubs to encroach upon the Bookers' view of the lake. Mr. Booker further testified that the lake view was the primary reason the Bookers purchased their property.

¶17. Approximately a year before the 2016 trial, the shrubs began turning brown and were "burnt-looking." Mr. Glennis testified that the dead and dying shrubs extended in either direction along the fence only in the areas blocking the Bookers' view. Glennis admitted to using a weed-control product a couple of times in proximity to the bottom of the shrubs but testified that he never had a problem with the shrubs when he used that weed-control product. Glennis testified that one could spray this kind of product around the trunk of a tree, and it would not kill the tree. Glennis denied spraying the product the year the shrubs died.

¶18. Glennis explained that they lost twenty-nine of the shrubs, each being four-to-six-and-one-half-foot tall plants and that each of those shrubs, after growing for five years, were six-to-seven-foot wide. Glennis testified that he called in people from the State Park division of Department of Agriculture regarding the dead and dying shrubs. He testified that men came, pulled plants, and took samples of roots, leaves, and branches.[3] Glennis testified that

---

[3] The report from the Department of Agriculture was not admitted into evidence due to hearsay concerns.

he knew the shrubs were poisoned.

¶19.     The Bookers' claims and testimony conflicts with that of the Glennises. Mr. Booker claims to have made a twenty-seven year decision to be "organic" and not use chemicals on his property or plants. Mr. Booker admitted to and stressed at trial his status as a long-time knowledgeable and organic herb gardener. The Bookers deny poisoning or spraying the shrubs. Instead, Mr. Booker claims that two days before the Department of Agriculture men came, he saw Mr. Glennis spraying in the woods with a sprayer. Mr. Booker testified that he thought Mr. Glennis poisoned the shrubs and wanted Booker blamed for it.

¶20.     The chancellor noted "much acrimony" by the Bookers over the shrubs blocking their enjoyment of the view of the Glennises' lake. Further, photographs evidence that "the death of the shrub row stopped abruptly once the shrubs were no longer interfering with the [Bookers'] lake view" and that "the destruction of the shrub row is limited to the area that coincides with the Booker[s'] view of the lake." The chancellor also observed that after five years of peaceful growth, and reaching a height that would obstruct the lake, the shrubs are dead.

¶21.     The portion of the order on damages delineates the evidence presented at trial on the shrub destruction. Therein, the chancellor pointed out her reasoned scrutiny of the support, or lack thereof, provided by each party. The chancellor viewed the parties and the properties first hand; the chancellor heard the testimony from the witnesses. The chancellor noted that Mr. Booker's admission to gardening and cultivation skills as an organic farmer would grant Booker the knowledge necessary to destroy the shrubs. The chancellor found the evidence

8

clear and convincing that the Bookers destroyed the Glennises' shrubs and, in doing so, committed a trespass to the Glennises' property.

¶22. We cannot find that the chancellor abused her discretion or that the damage award is in any way exceptional or contrary to reason. The chancellor, as the sole trier of fact, determined the credibility of the witnesses and what weight to give the evidence. *Heidkamper v. Odom*, 880 So. 2d 362, 365 (¶10) (Miss. Ct. App. 2004) (quoting *Carter v. Carter*, 735 So. 2d 1109, 1114 (¶¶18-20) (Miss. Ct. App. 1999)). And, when, as here, there is conflicting testimony, this Court "gives deference to a chancellor's findings in regard to witness testimony, because the chancellor is able to observe and personally evaluate the witnesses' testimony and the parties' behavior." *McNeese v. McNeese*, 119 So. 3d 264, 275 (¶32) (Miss. 2013) (quoting *Gable v. Gable*, 846 So. 2d 296, 299 (¶12) (Miss. Ct. App. 2003)).

**CONCLUSION**

¶23. Based on our review, we find substantial evidence in the record to support the findings of the chancellor and we find no reason to question the chancellor's judgment. As such, we affirm the chancellor's damage award of $1,320 against the Bookers.

¶24. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

9